2003 UT 33

**STATE of Utah, Plaintiff and Respondent,**

v.

**Michael Shawn CASEY, Defendant and Petitioner.**

No. 20010622.

Supreme Court of Utah.

Dec. 5, 2003.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Susan Hunt, Salt Lake City, for plaintiff.

Michael R. Sikora, Salt Lake City, for defendant.

## AMENDED OPINION

On Certiorari to the Utah Court of Appeals

DURRANT, Associate Chief Justice:

¶ 1 This case concerns the mens rea that must be shown to convict a defendant of attempted murder. Specifically, we consider whether a conviction for attempted murder may rest upon a knowing mental state rather than an intentional mental state. Michael Shawn Casey was tried and convicted of at-

tempted murder, aggravated assault, and domestic violence in the presence of a child. He moved for a new trial, arguing that the jury instructions improperly stated that he could be convicted of attempted murder for acting knowingly or intentionally. He appealed from the denial of this motion. The court of appeals affirmed Casey's conviction, relying on two of our prior opinions addressing similar jury instructions for attempted murder. Casey then filed a petition for a writ of certiorari to this court. We hold that a conviction for attempted murder must rest on a finding that the defendant acted intentionally. Thus, the trial court improperly instructed the jury. Nevertheless, because the instructions in this case did not rise to the level of plain error or manifest injustice, we affirm.

## BACKGROUND

¶ 2 "We recite the facts from the record ... in the light most favorable to the jury's verdict." *State v. Verde,* 770 P.2d 116, 117 (Utah 1989) (citations omitted); *accord State v. Powell,* 872 P.2d 1027, 1028 (Utah 1994). In early 1999, Casey was involved in a relationship with Tresa Franz. On April 12, 1999, Casey and his friend, Terron Allred, met Franz at her home, where the three consumed some alcohol. Casey then drove Franz, Franz's four-year-old son, and Allred to tow Franz's truck to a friend's house. After dropping off the truck, Casey stopped at a liquor store where Franz purchased a bottle of rum. Though Franz and Allred had "a swig" of the rum, Casey consumed most of the bottle. Intoxicated, Casey became belligerent, and he and Franz began arguing. When Franz asked Casey to take her home, Casey refused, laughing at her and threatening to kill her.

¶ 3 Following this threat, Casey drove over to Tiffany Ribe's house, located in Salt Lake City. Once there, Casey got out of the vehicle and spoke with Ribe and others while Allred, Franz, and her child remained in the vehicle. When Casey returned to the vehicle, Allred got out to speak with Ribe, and Casey and Franz began arguing again. As Casey entered the driver's side of the vehicle, he reached behind the seat and grabbed a handgun from a camera bag. During the argument, Franz asked Casey if he was ready to go home. Casey responded, "F* * * you, bitch. I'm going to take you home alright," and pointed the gun at Franz's neck.

¶ 4 Observing Casey pointing the weapon at Franz, Ribe went over to the vehicle and told Casey to leave. Casey lowered the gun, apologized to Ribe, and agreed to leave. As Allred was getting back in the vehicle, Franz fled into Ribe's house for a few minutes. Franz returned to the vehicle, however, when she realized that her son was still in the back seat.

¶ 5 With Franz and Allred back in the vehicle, Casey began to pull out of Ribe's driveway. Casey and Franz began arguing again, and just after they pulled out of the driveway, Casey pointed the handgun at Franz's head. He pulled the trigger, but the handgun misfired; both Franz and Allred testified that they heard the click of the hammer when Casey pulled the trigger.[1] Casey then pointed the gun at Franz's feet and successfully fired a round, which lodged in the floor of the vehicle. Once again, Casey pointed the gun at Franz's head. This time, Franz grabbed Casey's arm, pushed it away, and jumped out of the moving vehicle. As Franz jumped, Casey fired one more time. In total, Casey fired two shots from the gun in addition to the one misfire.

## PROCEDURAL HISTORY

¶ 6 In August, 1999, following a three-day trial, a jury convicted Casey of attempted murder, aggravated assault, and domestic violence in the presence of a child. On the last day of trial, the court conducted a brief discussion with Casey's defense counsel and the prosecutor concerning the jury instructions. The court noted that "[t]he State had submitted jury instructions [and] the defense had not." Additionally, the court noted that Ca-

---

**1.** Allred testified at trial that he did not see Casey point the gun at Franz's head and that Casey was pointing the gun into the air when it misfired. Officer Reuban Torres testified, however, that when he talked with Allred on the night of the crime, Allred told him that he saw Casey point the gun at Franz's head.

sey's defense counsel "had indicated he had no exceptions to the instructions offered by the State." When the court asked whether either side would be requesting any additional instructions, Casey's defense counsel responded in the negative. These uncontested jury instructions were submitted to the jury.

¶ 7 Prior to sentencing, Casey's trial counsel filed a motion to withdraw. The trial court granted the motion and referred the matter to the Legal Defenders Association, which, in turn, referred the case to a conflict attorney. On November 22, 1999, Casey's new counsel filed his appearance. This new counsel subsequently filed a motion on January 5, 2000, to vacate the convictions. In this motion, Casey's new counsel presented for the first time the argument that the jury was improperly instructed regarding attempted murder. On January 31, 2000, the trial court first sentenced Casey on his convictions and then heard argument regarding the motion to vacate. The trial court treated the motion to vacate as a motion for a new trial, which it denied on February 4, 2000. On February 10, 2000, Casey appealed his convictions to the court of appeals.

¶ 8 Before the court of appeals, Casey argued, among other things, that the trial court improperly instructed the jury on the elements of attempted murder. *See State v. Casey*, 2001 UT App 205, ¶ 7, 29 P.3d 25. He asserted that his conviction for attempted murder should be reversed because "the jury was improperly instructed that the required mental state was 'intentionally or knowingly.' " *Id.* Following a discussion of our holdings in *State v. Maestas*, 652 P.2d 903 (Utah 1982), and *State v. Vigil*, 842 P.2d 843 (Utah 1992), the trial court concluded that "*Vigil* explicitly allows a conviction [for attempted murder] for a 'knowing' mental state under" the "intentionally or knowingly" alternative of the murder statute. *Id.* at ¶ 13; Utah Code Ann. § 76–5–203(1)(a) (1999).[2]

¶ 9 Casey filed a petition for a writ of certiorari with this court, challenging the court of appeals' decision solely on the issue of whether he was wrongly convicted of attempted murder because the jury instructions permitted the jurors to find him guilty if they determined he acted with an intentional *or* knowing state of mind. We have jurisdiction to review the decision of the court of appeals pursuant to section 78–2–2(3)(a) of the Utah Code. Utah Code Ann. § 78–2–2(3)(a) (2002).

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 10 On certiorari, we review the court of appeals' decision for correctness, giving its conclusions of law no deference. *State v. James*, 2000 UT 80, ¶ 8, 13 P.3d 576; *State v. Galli*, 967 P.2d 930, 937 (Utah 1998).

### II. ATTEMPTED MURDER

¶ 11 On certiorari, Casey argues that a defendant cannot be convicted of attempted murder based merely on a "knowing" state of mind. In support of this position, he relies on *State v. Vigil*, 842 P.2d 843 (Utah 1992), wherein we interpreted the attempt statute[3] to require intent. Based on that case, Casey argues that the trial court improperly instructed the jury on the elements of attempted murder when it included an attempted murder instruction based on the intentional or knowing alternative of the murder statute. The State argues that in *Vigil* we specifically permitted prosecutions for attempted murder based on the intentional or knowing alternative of the murder statute, *see* 842 P.2d at 848 n. 5, and that the trial court correctly instructed the jury on the elements of attempted murder.

¶ 12 We now hold that an attempted murder conviction requires proof that the defendant acted intentionally. We reach this

---

**2.** Utah's murder statute contains several alternatives. The one at issue in this case, section 76–5–203(1)(a), states that "[c]riminal homicide constitutes murder if the actor ... intentionally or knowingly causes the death of another." Utah Code Ann. § 76–5–203(1)(a) (1999). We note that section 76–5–203 was amended in 2000,

adding a new subsection but retaining the language at issue. *See* Utah Code Ann. § 76–5–203 (Supp.2002). We apply the section in effect at the time of the conduct giving rise to the charges.

**3.** Utah Code Ann. § 76–4–101 (1999).

conclusion relying on the following authority: our previous cases, Utah's attempt statute (as distinguished from the Model Penal Code ("M.P.C.")), and authority from other jurisdictions. Before examining this authority, however, we will first identify the statutory elements of attempted murder.

### A. The Elements of Attempted Murder

¶ 13 Attempt crimes are derivatives of completed crimes, and the express language of both the completed crime statute and the attempt statute determines the elements of the attempt crime. Thus, a conviction for attempted murder must satisfy the elements of the murder statute, with the obvious exception that the murder need not be completed, and the attempt statute.

¶ 14 The murder statute at issue in this case allows for a conviction if a person "intentionally or knowingly causes the death of another." Utah Code Ann. § 76–5–203(1)(a). Both "intentionally" and "knowingly" are defined by statute. One acts intentionally "when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 76–2–103(1) (1999). On the other hand, one acts knowingly "when he is aware of the nature of his conduct or the existing circumstances" and "aware that his conduct is reasonably certain to cause the result." *Id.* § 76–2–103(2). A defendant can be convicted of murder under either level of culpability.

¶ 15 To be convicted of attempted murder, however, additional and different elements must be shown under the attempt statute. The attempt statute states as follows:

(1) For purposes of this part a person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for the commission of the offense, he engages in conduct constituting a substantial step toward commission of the offense.

(2) For purposes of this part, conduct does not constitute a substantial step unless it is strongly corroborative of the actor's intent to commit the offense.

*Id.* § 76–4–101. Thus, to be convicted of attempted murder, a defendant's actions must constitute a substantial step toward causing the death of another, and the substantial step must indicate his or her intent to commit the crime. In this case, Casey argues that the substantial step must indicate the intent to kill. Indeed, some authorities have noted that "[a]lthough murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill." 4 Charles E. Torcia, *Wharton's Criminal Law* § 695, at 591–97 (15th ed.1996). We must now decide whether a conviction for attempted murder in Utah requires a higher level of culpability than that required for murder.

### B. Maestas, Vigil, and Other Utah Authority

¶ 16 Casey's challenge is not strictly one of first impression. We have addressed jury instructions regarding attempted murder in the past; two of these decisions, *State v. Maestas,* 652 P.2d 903 (Utah 1982), and *Vigil,* addressed jury instructions based on the same language at issue in the instant case. Additionally, when addressing attempted murder under other alternatives of the murder statute, we have consistently held that intentional conduct is required by the attempt statute.

### 1. State v. Maestas

¶ 17 In *Maestas,* the trial court granted the defendant's motion to dismiss his conviction for attempted first degree murder,[4] ruling that "specific intent to kill could not properly be inferred from the evidence." 652 P.2d at 904 (citation and quotation omitted). The State appealed. On appeal, Maestas argued that, under the common law rule, "an 'attempt' crime must always consist of an intent to commit the corresponding completed crime accompanied by a substantial step

---

**4.** At the time, the first degree murder statute was contained in section 76–5–202 of the Utah Code. Utah Code Ann. § 76–5–202 (1978). This section now defines aggravated murder. *See id.* § 76–5–202 (Supp.2002). In 1978, the statute read "[c]riminal homicide constitutes murder in the first degree if the actor intentionally or knowingly causes the death of another under any" of eight circumstances. *Id.* § 76–5–202 (1978).

toward realization of that crime." *Id.* He derived this theory "from the common law rule that intent is a necessary element of every 'attempt' crime even where the corresponding completed crime does not require intent as an element." *Id.* Expanding on this argument, the defendant asserted that "attempted first degree murder ... requires a 'specific intent' beyond that which would have been required in order to provide first degree murder itself." *Id.* We noted that according to this argument, "the crime of attempted murder [would] require[ ] a *stronger* showing of intent than does the crime of murder itself." *Id.* (emphasis added). In other words, Maestas argued that the State must prove a greater degree of intent in order to obtain a conviction for attempted murder than to obtain a conviction for murder.

¶ 18 Instead of adopting this argument that a greater degree of intent is required for attempted murder, we gave two alternative rationales for upholding the conviction. First, looking to the attempt statute,[5] we held that "Utah law requires only 'the kind of culpability otherwise required for the commission of the [completed] offense.' Thus, there can be no difference between the intent required as an element of the crime of attempted first degree murder and that required for the first degree murder itself." *Id.* (alteration in original) (quoting Utah Code Ann. § 76–4–101(1) (1978)). We rejected the notion that attempted murder required a different, higher degree of culpability than a murder conviction. Second, we noted that the common law rule differentiated "between an attempted crime and completed crime only where the completed crime may be committed without the intent to commit that crime in particular." *Id.* at 905. Where an intent to commit the particular crime committed is an element of the completed crime, the same intent requirement applies to the corresponding "attempt"

crime, even at common law. Thus, Utah's first degree murder statute, which does contain such an intent requirement, would not fall within the rule cited by defendant even under common law principles.

*Id.* This holding indicated that attempted murder required an intent to commit the particular crime as an element of the offense and ignored the fact that, by definition, a murder conviction could rest on either knowing or intentional conduct.

¶ 19 Though we concluded that a conviction for attempted murder only required the same mental state necessary to obtain a murder conviction, we failed to acknowledge the distinction between acting knowingly and intentionally. Instead, we merely examined "[t]he evidence tending to indicate that [Maestas] *intentionally* fired his revolver," *id.* (emphasis added), and held that "substantial evidence supported the jury in finding that the state had established both the act and the *intent* components of attempted first degree murder," *id.* at 907 (emphasis added). We focused on whether the evidence showed the defendant acted intentionally without considering whether he acted knowingly.

### 2. *State v. Vigil*

¶ 20 Ten years later we decided *Vigil*, holding that Utah does not recognize attempted second degree murder under the depraved indifference alternative of the murder statute.[6] Using a plain language analysis to determine the meaning of "culpability" and "intent" in the two paragraphs of the attempt statute, we determined that

to give the fullest possible effect to the terms of paragraphs (1) and (2), we construe the culpability requirement in paragraph (1) to refer to the attendant circumstances, if any, of the underlying offense and construe the intent language in paragraph (2) to limit the attempt statute to offenses with a mental state of "intent." In other words, *attempt can be found for*

---

**5.** Utah's attempt statute has not changed since the *Maestas* decision. *Compare* Utah Code Ann. § 76–4–101(1) (1978), *with id.* § 76–4–101(1) (1999).

**6.** According to this alternative of the murder statute, an actor commits murder "if the actor

... acting under circumstances evidencing a depraved indifference to human life engages in conduct which creates a grave risk of death to another and thereby causes the death of another." Utah Code Ann. § 76–5–203(1)(c) (1999).

*uncompleted offenses that require "intent,"* even though those offenses have attendant circumstances that require lesser mental states.

*Vigil,* 842 P.2d at 845–46 (emphasis added) (footnote omitted). We held that "the word 'intent' as used in ... the attempt statute should be read to mean 'conscious objective or desire.' This meaning of the word 'intent' obviously is distinguishable from *knowledge* of the proscribed conduct or result, which is the mental state required for depraved indifference homicide." *Id.* at 847 (emphasis added) (quoting Utah Code Ann. § 76–2–103(1) (defining intentional conduct)).

¶ 21 Following this analysis of the language of the attempt statute, we held "that to convict a defendant of attempted second degree murder, the prosecution must prove that the defendant had a conscious objective or desire to cause the death of another." *Id.* at 848. Accordingly, in a footnote to the *Vigil* case, we overruled the *Maestas* decision to the extent it held that a defendant could be convicted for an attempt crime if he or she acted with the same level of culpability necessary to support a conviction for committing the completed crime. *See id.* at 848 n. 5.

¶ 22 However, we created some confusion by noting in the same footnote that the *Vigil* holding did not overrule the second rationale we used in *Maestas* to uphold the conviction for attempted murder. In the second rationale, we assumed that since intent to commit the particular offense was already an element of murder, it was also an element of attempted murder, but in this discussion, we overlooked the fact that murder could also be committed knowingly. In *Vigil,* we magnified this mistake by specifically stating in dicta "that *Maestas* is still good law insofar as it authorizes prosecution for attempted aggravated murder under the intentional *or knowing* formulation of section 76–5–202(1) or attempted murder under the intentional *or knowing* formulation of section 76–5–203(1)(a)." *Id.* (emphasis added). Thus, the dicta in this footnote, contrary to the holding

expressed in the main body of the opinion, provided that a person may be convicted of attempted murder if evidence showed that he or she acted knowingly or intentionally. Based on this footnote in *Vigil,* the trial court and the court of appeals denied Casey's challenges to the jury instructions concerning attempted murder.

### 3. *Other Utah Cases Concerning Attempted Murder*

¶ 23 In other cases in which we have discussed the level of culpability necessary to convict a defendant of attempted murder, we have consistently required intentional conduct. A month before we decided *Maestas,* we held that an attempted manslaughter conviction requires intentional conduct. *See State v. Howell,* 649 P.2d 91 (Utah 1982) (holding that one can be convicted of attempted manslaughter under the subsections of section 76–5–205 that require intentional conduct but not under the subsection that only requires the mens rea of recklessness). In that case, we reasoned "that one cannot be guilty of an attempt to commit a crime unless the necessary mens rea of the completed crime is intentional conduct. To convict of an attempt, one must necessarily have the intent required to convict of the complete crime." *Id.* at 94 n. 1.

¶ 24 Analyzing the attempt statute in another case, we reached a similar result on the issue of whether a defendant could be charged with attempted murder under the felony-murder alternative of the murder statute.[7] "The crime of attempted murder does not fit within the felony-murder doctrine because an attempt to commit a crime requires proof of an *intent* to consummate the crime, and numerous courts have held that the crime of attempted murder requires proof of intent to kill." *State v. Bell,* 785 P.2d 390, 393 (Utah 1989) (emphasis added) (footnote omitted). "Indeed, in the face of logic, the conclusion is inescapable that the crime of attempted murder requires proof of intent to kill. Therefore, we also hold that attempted felony-murder does not exist as a crime in

---

7. An individual is guilty of murder under the felony-murder alternative of the murder statute "if the actor ... while in the commission or attempted commission of [one or more of twenty specified crimes] causes the death of another person other than a party as defined in Section 76–2–202." Utah Code Ann. § 76–5–203(1)(d) (1999).

Utah." *Id.* at 394. Through these decisions, we have consistently interpreted the attempt statute narrowly, requiring a showing of the defendant's intent to consummate the crime for conviction. Thus, no conviction for attempt may be obtained without evidence of intentional conduct.

### 4. *Summary*

¶ 25 In *Maestas*, even though we upheld the conviction for attempted murder, we did so because we found that ample evidence existed for the jury to determine that the defendant intentionally committed the crime. Ignoring the language of the murder statute that required either knowing or intentional conduct, we noted that as long as intent is an element of the completed crime, that same intent is required for the attempt crime. *See Maestas*, 652 P.2d at 905. In *Vigil*, we held that the attempt statute requires intentional conduct in order to convict a defendant of attempted second degree murder. *See Vigil*, 842 P.2d at 848. However, in dicta, we authorized prosecutions for attempted murder under the intentional or knowing alternative of the murder statute. *Id.* at 848 n. 5. Despite this inconsistency, we have, in other cases, specifically held that attempted murder requires proof of intentional conduct, namely, intent to kill. *See Bell*, 785 P.2d at 393; *Howell*, 649 P.2d at 94.

### C. *The Model Penal Code and Attempt*

¶ 26 Contrary to the State's argument, the Model Penal Code does not provide support for the contention that a knowing mens rea is sufficient to obtain an attempted murder conviction under Utah law. Though we have noted that the Utah attempt statute is based on the M.P.C. definition of attempt, *see Vigil*, 842 P.2d at 846; *State v. Pearson*, 680 P.2d 406, 408 (Utah 1984), our statute, in contradistinction to the M.P.C., requires intentional conduct.

¶ 27 The M.P.C. identifies four levels of culpability, providing that "a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently." Model Penal Code § 2.02 (1985).[8] The com-

mentary to the M.P.C. notes that the narrow distinction between "purposely" and "knowingly" is "one of the elements of ambiguity in legal usage of the term 'intent.'" Model Penal Code and Commentary § 2.02 cmt. 2, at 233 (1985). The commentary also notes that the

> distinction [between purposely and knowingly] is inconsequential for most purposes of liability; acting knowingly is ordinarily sufficient. But there are areas where the discrimination is required and is made under traditional law, which uses the awkward concept of "specific intent." This is true in treason ... and in *attempts* ... where a true purpose to effect the criminal result is requisite for liability.

*Id.* at 234 (emphasis added). While the difference between these two levels of culpability may be minimal, the M.P.C. commentary notes that the distinction becomes important in attempt crimes.

¶ 28 In the M.P.C. formulation of attempt, however, a person can be convicted of an attempt crime if the person acted in one of two ways: "purposely engag[ing] in conduct," *or*, "when causing a particular result is an element of the crime, do[ing] ... anything with the purpose of causing or with the belief that it will cause such result without further conduct on his part." Model Penal Code § 5.01(1)(a), (b) (1985). According to the commentary, the M.P.C. definition is, in general, "designed to follow the conventional pattern of limiting the crime of attempt to purposive [or intentional] conduct." Model Penal Code and Commentary § 5.01 cmt. 2, at 301 (1985). Nevertheless, while the M.P.C. expressly rejects the notion that an attempt can be committed recklessly or negligently, it does allow for attempts to be committed purposely or knowingly. "When ... a person actually believes that his behavior will produce the proscribed result, it is appropriate to treat him as attempting to cause the result, whether or not that is his purpose." *Id.* at 304. As an example, the M.P.C. commentary provides that

---

8. When the Utah legislature adopted this section of the M.P.C., it decided, however, to substitute the word "intentionally" for the word "purposely." *See* Utah Code Ann. § 76–2–103 (1999).

[i]f ... the actor's purpose were to demolish a building and, *knowing* that persons were in the building and that they would be killed by the explosion, he nevertheless detonated a bomb that turned out to be defective, he could be prosecuted for attempted murder even though it was no part of his purpose that the inhabitants of the building would be killed.

*Id.* at 305 (emphasis added).

¶ 29 Though the M.P.C. would allow a conviction for attempt based on knowledge alone, Utah's attempt statute does not. Instead it allows convictions for attempt crimes only upon strong corroboration "of the actor's *intent* to commit the offense." Utah Code Ann. § 76–4–101(2) (1999) (emphasis added); *see also Vigil,* 842 P.2d at 848 (interpreting, in the main holding of the opinion, the attempt statute to require intentional conduct). Because the Utah legislature did not adopt the particular wording of the M.P.C. that would have allowed a knowing attempt, we assume that it did so deliberately in order to limit the reach of the attempt statute to intentional conduct. *See Vigil,* 842 P.2d at 847.

### D. *Persuasive Authority from Other Jurisdictions*

#### 1. *Jurisdictions Allowing Conviction for "Knowing" Attempted Murder*

¶ 30 The State argues that allowing a conviction for attempted murder to stand on a knowing mens rea would be consistent with the decisions of other states. *See Free v. State,* 455 So.2d 137, 147 (Ala.Ct.App.1984); *State v. Nunez,* 159 Ariz. 594, 769 P.2d 1040, 1042–43 (Ct.App.1989); *People v. Gonzales,* 926 P.2d 153, 155 (Colo.Ct.App.1996); *State v. Feliciano,* 62 Haw. 637, 618 P.2d 306, 308 (1980), *superseded by statute as stated in State v. Rumbawa,* 94 Hawai'i 513, 17 P.3d 862, 866 (Ct.App.2001); *Bartlett v. State,* 711 N.E.2d 497, 499 (Ind.1999); and *Gentry v. State,* 881 S.W.2d 35, 40 (Tex.Ct.App.1994). We do not find any of these cases cited by the State persuasive. Most of them only indirectly address the culpability required for attempt crimes. *See Gentry,* 881 S.W.2d at 40 (concerning double jeopardy issues); *Free,* 455 So.2d at 147 (disallowing multiple indictments stemming from a single action); and *Bartlett,* 711 N.E.2d at 499, and *Gonzales,* 926 P.2d at 155 (focusing mainly on issues unrelated to attempt). The few cases that directly address whether an attempted murder conviction may be obtained when a defendant acts knowingly are distinguishable.

¶ 31 In *Nunez,* the Court of Appeals of Arizona concluded "that attempted first degree murder can be knowingly committed." 769 P.2d at 1043. The court reached this conclusion by looking to the language of Arizona statutes, the court's prior case law, the commentary to the Model Penal Code, and the commentary to the Arizona Criminal Code Commission. *See id.* at 1042–43. Because the court looked to sources specific to Arizona law and because the Arizona statute closely mirrors the M.P.C., this case is not particularly persuasive to us.

¶ 32 In another case, the Texas Court of Appeals upheld a woman's conviction for attempted capital murder of a police officer. *Gelabert v. State,* 712 S.W.2d 813, 817–18 (Tex.Ct.App.1986). That court held that "[b]ecause 'knowing' is a sufficient mental state for attempted capital murder, the State was not required to prove additionally that the appellant shot at [police] officers with the 'intent to kill.'" *Id.* at 817. The persuasiveness of this case is, however, also limited because it expressly distinguished its holding regarding attempted capital murder from an earlier Texas case regarding attempted murder because of the language contained in Texas's capital murder statute. In the earlier case, interpreting a Texas murder statute nearly identical to Utah's, the Texas Criminal Appellate Court held that "attempted murder can only be committed by a person who has the intent to commit or complete the offense of murder, *viz.,* the intent to kill." *Flanagan v. State,* 675 S.W.2d 734, 742 (Tex. Crim.App.1984). Because *Flanagan* is directly on point, we are not persuaded by the *Gelabert* case. Thus, no authority from other states convinces us that attempted murder in Utah can be committed "knowingly."

#### 2. *Jurisdictions Rejecting "Knowing" Attempted Murder*

¶ 33 On the other hand, we are persuaded by the reasoning of the numerous jurisdic-

tions that hold a person cannot be convicted of attempted murder with only a "knowing" mens rea. The Maine Supreme Court, in a case similar to the instant case, held that "[b]efore a person can be convicted of attempted murder, he must act with the intent to cause the death of another human being." *State v. Huff*, 469 A.2d 1251, 1253 (Me.1984). Thus, the court concluded that "in a prosecution for criminal attempt, where alternative culpable mental states will satisfy the target offense, but only one is compatible with the attempt statute, the incompatible element must be omitted from the jury instructions." *Id.*

¶ 34 Examining a conviction for attempted murder under a definition of murder that allowed either an intentional or a knowing mens rea, the Illinois Appellate Court held that "the difference between intent and knowledge should not be treated as a metaphysical distinction which can be ignored. Knowledge is not intent as defined by our statutes, and the jury instructions should reflect this distinction." *People v. Kraft*, 133 Ill.App.3d 294, 88 Ill.Dec. 546, 478 N.E.2d 1154, 1160 (1985); *see also Spradlin v. State*, 569 N.E.2d 948, 950 (Ind.1991) (holding that a jury could not be instructed that attempted murder can be committed "knowingly").

¶ 35 In sum, though the State cites several cases to support its argument that attempt crimes may be committed knowingly, we find them unpersuasive. However, several cases from other jurisdictions that directly address the attempt issue support our conclusion to disallow convictions for attempted murder based on the mens rea of knowledge alone.

#### E. An Attempted Murder Conviction Requires Proof of Intent

¶ 36 Contrary to these authorities, the State argues that "intentionally" and "knowingly" are functional equivalents. Although the distinction between intentional conduct and knowing conduct is narrow, the statutory definition of these terms creates a meaningful difference between the two. *See* Utah Code Ann. § 76–2–103(1), (2). In addition,

the Utah Code specifically states that acting "intentionally" encompasses acting "knowingly," *see id.* § 76–2–104(3),[9] but it does not provide for the reverse.

¶ 37 Indeed, we accept that it is difficult to conceptualize many examples where one could attempt to commit murder knowingly but not intentionally. However, it is certainly possible that a knowing crime can be committed unintentionally. That is, a person can know that a certain action will cause a certain result without that result being the person's conscious objective. For example, a person may know that blowing up a building will cause the death of people inside, but if his or her intent or conscious objective is only to destroy the building, there is no intent, for purposes of attempt, to kill. *See* Model Penal Code and Commentary § 5.01 cmt. 2, at 305. By acknowledging that a person may knowingly commit murder without committing the crime intentionally, we also recognize that such behavior is rare. Notwithstanding this observation, we conclude that a conviction for attempted murder must rest on intentional conduct.

¶ 38 In making this clarification, we acknowledge that dicta in the *Vigil* footnote interpreting *Maestas* created confusion regarding the mens rea necessary to convict a person of attempted murder. The court of appeals relied in this case on our *Maestas* decision and our footnote in *Vigil*. It stated that if we had "intended to eliminate attempted 'knowing' murders under the 'intentional or knowing' alternative" of the murder statute, we would have said so. *State v. Casey*, 2001 UT App 205, ¶ 14, 29 P.3d 25. Although the court of appeals correctly interpreted the language contained in footnote 5 of *Vigil*, our other cases have consistently held that intent is required to convict someone of an attempt crime. We now hold that a defendant may only be convicted of attempted murder when he or she acts intentionally. To the extent that our opinion in *Maestas* and our footnote in *Vigil* contradict this holding, they are overruled. In order to convict a defendant of attempted murder, the

---

9. Section 76–2–104(3) states that "[i]f acting knowingly is sufficient to establish the culpable mental state for an element of an offense, that

element is also established if a person acts intentionally." Utah Code Ann. § 76–2–104(3) (1999).

prosecution must show that the defendant acted intentionally.

## III. APPLICATION OF THE MANIFEST INJUSTICE OR PLAIN ERROR DOCTRINE

 ¶ 39 Although we have determined that a conviction based on attempted murder requires proof that the defendant acted intentionally, it does not necessarily follow that we must overturn Casey's conviction. Casey's defense counsel did not object to the jury instructions prior to, or at, trial. The Utah Rules of Criminal Procedure clearly state that "[u]nless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R.Crim. P. 19(e). Because of the lateness of Casey's objection to the jury instructions, we will only remand for a new trial if the error we have identified constitutes a "manifest injustice." [10]

¶ 40 In previous cases we have determined the meaning of "manifest injustice." In our first case to explicitly define this term, we held that "in most circumstances the term 'manifest injustice' is synonymous with the 'plain error' standard expressly provided in Utah Rule of Evidence 103(d) and elaborated upon in *Eldredge*." *State v. Verde*, 770 P.2d 116, 121–22 (Utah 1989) (citing *State v. Eldredge*, 773 P.2d 29 (Utah 1989)). We then noted that "[a]s explained in *Eldredge* ... the plain error test of rule 103(d) is two-pronged. First the error must be 'plain' or 'manifest.' This is sometimes termed an 'obviousness' requirement.... Second, the error must be of sufficient magnitude that it affects the substantial rights of a party." *Id.* at 122.

¶ 41 Subsequently, we determined that the plain error analysis applied to a challenged jury instruction that incorrectly informed the

jury of the mens rea for depraved indifference murder. *State v. Powell*, 872 P.2d 1027, 1029–31 (Utah 1994). Explaining the "manifest injustice" or "plain error" standard, we stated that

> "to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show the following: (i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined."

*Id.* at 1031 (quoting *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993)). We also noted that "if any one of those requirements is not met, plain error is not established." *Id.* Therefore, we now examine the contested jury instructions under the plain error test and will remand this case for a new trial only if each element of the test is met.

### A. Did the Trial Court Commit Error?

 ¶ 42 Casey argues that it was error for the trial court to instruct the jury that attempted murder can be committed "knowingly or intentionally." Instruction fifteen informed the jury that "[u]nder the law of the State of Utah, a person commits attempted criminal homicide, murder, if the actor attempts, intentionally *or knowingly*, to cause the death of another." However, in instruction sixteen, the trial court informed the jury that "[c]onduct does not constitute a substantial step [toward the commission of an offense] unless it is strongly corroborative of the actor's intent to commit the offense." Finally, instruction seventeen defined the terms "intentionally" and "knowingly," quoting the statutory language of section 76–2–103 of the Utah Code.

---

**10.** In a recent case, we held that "if counsel, either by statement or act affirmatively represented to the court that he or she had no objection to the jury instruction we will not review the instruction under the manifest injustice exception." *State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111. This holding is based on the invited error doctrine as explained in *State v. Dunn*, 850 P.2d 1201, 1220 (Utah 1993). While it would appear that *Hamilton* may preclude application of the plain error analysis under Rule 19(e), neither party raised this question below or in their briefs or at oral argument before us. "[B]ecause the issue was neither raised below nor briefed on appeal, we will not make that determination sua sponte." *Evans v. State*, 963 P.2d 177, 184 (Utah 1998).

¶ 43 These instructions indicated to the jury that they could convict Casey if he intentionally *or* knowingly attempted to take the life of another. While the instructions mirrored the language of the murder statute, they incorrectly indicated to the jury that attempted murder could be committed knowingly. In accordance with our holding in Part II, we agree with Casey that the trial court committed error by submitting these instructions to the jury.[11] Recognizing that the trial court committed error simply begins our analysis under the plain error test. We must now determine whether this error was obvious and whether it was of sufficient magnitude to constitute plain error.

### B. Should the Error Have Been Obvious to the Trial Court?

¶ 44 The second element of the plain error test requires that the error be plain, manifest, or obvious to the trial court. *See Powell,* 872 P.2d at 1031; *Verde,* 770 P.2d at 122. In explaining this prong, we have held that "[a]fter examining the record, an appellate court must be able to say 'that it should have been obvious to a trial court that it was committing error.' " *Verde,* 770 P.2d at 122 (quoting *Eldredge,* 773 P.2d at 35). In other words, "given the circumstances, the trial court should have been aware that an error was being committed at the time." *Id.* at 122 n. 11 (citations omitted).

¶ 45 Given our footnote in *Vigil* indicating that "*Maestas* is still good law insofar as it authorizes prosecution for . . . attempted murder under the intentional or knowing formulation of section 76-5-203(1)(a)," 842 P.2d at 848 n. 5, we do not believe that the error was plain, manifest, or obvious. In denying Casey's motion for a new trial, the trial court

was guided by our statement in *Vigil* and our holding in *Maestas.* When the court of appeals considered this issue, it also affirmed the trial court by relying on these same cases. Because of the confusion created by our prior decisions, especially by the footnote in *Vigil,* we cannot say that the error should have been plain or obvious to the trial court.

### C. Was the Error Harmful?

¶ 46 Even were we to assume the error in jury instructions to be plain or obvious, Casey's argument would nevertheless fail because no harm resulted in this case. According to the last prong of the plain error test, we must determine whether the error was "of sufficient magnitude that it affects the substantial rights of a party." *Verde,* 770 P.2d at 122. In *Powell,* we indicated that such error must be harmful. *See Powell,* 872 P.2d at 1031. "In other words, . . . the appellant must show a reasonable likelihood that absent the error, the outcome below would have been more favorable." *Verde,* 770 P.2d at 122. Plain error undermines " 'our confidence in the verdict.' " *Powell,* 872 P.2d at 1031 (quoting *Dunn,* 850 P.2d at 1208).

¶ 47 As we have stated previously, we recognize that there exists a narrow set of circumstances where a person may act "knowingly" without acting "intentionally." These terms are not, however, mutually exclusive, and most "knowing" conduct also fits accurately within the statutory definition of "intentional" conduct. In this case, we see no rational basis upon which Casey's conduct could be considered knowing but not inten-

---

11. However, we note that attempted murder is not a crime specifically defined by a single statute. As previously stated herein, all attempt crimes are defined by the attempt statute *and* the completed crime statute. The State argues that by holding attempted murder may only be committed "intentionally" we would create a new alternative to the murder statute that ignores the "or knowingly" language of section 76-5-203(1)(a). Our holding does not require such a result. Rather, we stress that the appropriate method of instructing the jury is to emphasize the intent element of attempt crimes. In *Maestas,* we determined that the jury had "received

proper instructions concerning *the act and intent requirements for the crime charged." Id.* (emphasis added). Courts of other jurisdictions have similarly determined that as long as instructions are sufficiently clear to avoid juror confusion regarding the intent requirement of attempt crimes, no error can be assigned to the use of the statutory language of the completed crime. *See State v. Brown,* 479 A.2d 1317, 1320 (Me.1984); *Spradlin v. State,* 569 N.E.2d 948, 950 (Ind. 1991). Therefore, instructions in future cases should clearly inform the jury that an intent to kill is a required element of attempted murder.

tional in light of the evidence submitted at trial.[12]

■■ ¶ 48 It is well established that "criminal intent is seldom proved by direct evidence but must be instead inferred from the circumstances of the given facts." *State v. Castonguay,* 663 P.2d 1323, 1326 (Utah 1983). We have also held that "[a]ll the circumstances, when taken together, must admit of no other reasonable hypothesis than that of guilt to warrant conviction." *Id.* In this case, no reasonable jury could have found that Casey acted knowingly without also finding that he acted intentionally.

¶ 49 All of the circumstantial evidence clearly indicates that Casey acted intentionally. In the vehicle, before arriving at Ribe's house, Casey threatened to kill Franz. At Ribe's house, he pulled out a gun, pointed it at Franz's neck, and made further threatening remarks towards her. Finally, as they were leaving Ribe's property, Casey pointed his gun at Franz's head and pulled the trigger, but the gun misfired. After the misfire, Casey fired the gun successfully at Franz's feet. Then Casey pointed the gun once again at Franz's head. As Franz pushed the gun away and jumped out of the car, Casey fired the gun again. Thus, the evidence clearly shows that he not only threatened to kill Franz, but he also fired multiple shots at her.

¶ 50 From this evidence, there is no basis on which the jury could have concluded that Casey acted knowingly without also concluding that he acted intentionally. The evidence presented at trial allows no other hypothesis and shows that Casey not only was "aware that his conduct [was] reasonably certain to cause" Franz's death, Utah Code Ann. § 76–2–103(2), but that "it [was] his conscious objective or desire to ... cause" her death, *id.* § 76–2–103(1). Because the trial evidence substantially supported the jury's verdict

that Casey intentionally attempted to murder Franz, we hold that the trial court's error in instructing the jury concerning attempted murder did not constitute plain error in this case.

### CONCLUSION

¶ 51 We hold that in order to convict a defendant of attempted murder, the prosecution must establish that the defendant acted intentionally; it is not enough that he or she acted knowingly. However, we do not believe this holding significantly impacts Casey's conviction. Since Casey did not object to the jury instructions prior to his convictions, any error committed by the trial court when it instructed the jury would result in reversal only if such error constituted manifest injustice or plain error. Because of the confusion created by our footnote in *Vigil,* which interpreted our holding in *Maestas* to allow attempted murder convictions based on intentional or knowing conduct, we hold that the error in the jury instructions was not plain, manifest, or obvious. In addition, we hold that the error was not of sufficient magnitude to affect Casey's substantial rights because no reasonable jury could have concluded that he acted knowingly without also concluding that he acted intentionally. For these reasons we conclude that no manifest injustice or plain error resulted from the use of the jury instructions in this case. Accordingly, we affirm.

¶ 52 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.

---

12. In another case, in the context of a sufficiency of the evidence challenge, we held that "a general verdict of guilty cannot stand if the State's case was premised on more than one factual or legal theory of the elements of the crime and any one of those theories is flawed or lacks the requisite evidentiary foundation." *State v. Johnson,* 821 P.2d 1150, 1159 (Utah 1991). This holding was based on our determination that where two alternative aggravating factors were argued to the jury and could have caused the jury to convict the defendant of attempted aggravated mur-

der, "it is impossible to determine whether the jury agreed unanimously on all of the elements of a valid and evidentially supported theory of the elements of the crime." *Id.* Here, there is no such concern regarding a jury vote split between competing theories. Although we have determined that a conviction for attempted murder cannot rest on a "knowing" mens rea, as we discuss below, no reasonable jury could have concluded that Casey acted knowingly without also concluding that he acted intentionally.