2007 UT 83

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Lexis ALINAS, Defendant and Appellant.**

No. 20051000.

Supreme Court of Utah.

Oct. 26, 2007.

Mark L. Shurtleff, Att'y Gen., Kenneth A. Bronston, Asst. Att'y Gen., William K. Kendall, Michael S. Colby, Salt Lake City, for plaintiff.

Ronald S. Fujino, Salt Lake City, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 Defendant Lexis Alinas appeals from convictions of seven counts of Sexual Exploitation of a Minor, a second degree felony, in violation of Utah Code section 76–5a–3. Alinas seeks reversal by raising several issues: (1) whether the jury instructions used language which condemned constitutionally protected speech; (2) whether the introduction of adult pornography, possessed by Alinas at the time of his arrest, was improperly introduced and considered by the jury; (3) whether the State failed to prove that the child exhibits depicted real children under the age of eighteen; (4) whether Alinas was prejudiced by the use of enlarged exhibits; (5) whether trial counsel was ineffective; and (6) whether Alinas' due process rights were vio-

lated when the court of appeals rejected his 23B motion.

## BACKGROUND

¶ 2 While walking past a bank of computers on the way to her office, a librarian at the University of Utah's Marriott Library noticed, on the top of Alinas' computer screen, the headline "Little Girls Extreme" and several small pictures. The librarian immediately alerted library security, who, after speaking with Alinas and confirming that he had been viewing child pornography, notified the University of Utah Police. Alinas was arrested and searched. The officer found two floppy disks in Alinas' coat pocket. The officer verified that the disks contained images of nude female children, along with images of nude adult women.

¶ 3 At trial, Alinas admitted that he had downloaded nude pictures of young girls and saved them to the disks found in his coat pocket. However, Alinas denied possessing the pictures for the purpose of sexual arousal. Rather, Alinas claimed that the pictures were intended to help him visualize what he would have been like as a woman.

¶ 4 Alinas testified that from a very young age he had struggled with his sexual identity. He further testified that for the past sixteen or seventeen years he has dressed like a woman, that he once attempted to castrate himself, that he fantasized about being reborn as a girl, and that he considers himself to be a woman. According to Alinas, he searched the internet for pictures "that would represent the way I felt that I should have been born." Essentially, he used the pictures to envision himself as a little girl and as a woman. It was in furtherance of this goal, rather than for sexual arousal, that Alinas claimed that he downloaded the images on the day of his arrest.

¶ 5 Alinas was charged with seven counts of Sexual Exploitation of a Minor. A jury found him guilty on all counts. The court sentenced him to seven one-to-fifteen-year prison terms; the court then suspended the prison terms for all counts, granted him credit for the 607 days previously served, and

placed him on probation for thirty-six months.

¶ 6 Alinas moved for remand under Rule 23B of the Utah Rules of Appellate Procedure. The court of appeals denied the motion. Alinas appeals.

## STANDARD OF REVIEW

 ¶ 7 We review the trial court's factual findings for clear error and review its conclusions of law for correctness. *State v. Tiedemann*, 2007 UT 49, ¶ 11, 162 P.3d 1106. A constitutional challenge to a statute presents a question of law, which we review for correctness. *State v. Morrison*, 2001 UT 73, ¶ 5, 31 P.3d 547. "When addressing such a challenge, this court presumes that the statute is valid, and we resolve any reasonable doubt in favor of constitutionality." *Id.* (quoting *State v. Lopes*, 1999 UT 24, ¶ 6, 980 P.2d 191).

## ANALYSIS

¶ 8 Alinas raises several issues on appeal, most of which were unpreserved below. We review each issue in turn.

## I. THE JURY INSTRUCTIONS

 ¶ 9 Alinas attacks the validity of the jury instructions on two grounds. First, he claims that by allowing conviction for "any visual depiction," including "computer-generated" depictions, the instructions violated the rule set forth in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). Second, he claims that the instructions failed to fully and fairly define the phrase "sexually explicit conduct."

 ¶ 10 Alinas failed to object to the instructions at trial. " '[U]nless a party objects to an instruction . . . the instruction may not be assigned as error except to avoid a manifest injustice.' " *State v. Casey*, 2003 UT 55, ¶ 39, 82 P.3d 1106 (quoting Utah R.Crim. P. 19(e)). We have held that "in most circumstances the term 'manifest injustice' is synonymous with the 'plain error' standard. . . ." *Id.* ¶ 40 (quoting *State v. Verde*, 770 P.2d 116, 121–22 (Utah 1989)). To establish plain error, a defendant must

show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *Id.* ¶ 41 (quoting *State v. Powell,* 872 P.2d 1027, 1031 (Utah 1994)).

¶ 11 Under this standard, Alinas' attack on the jury instructions fails.

### A. Ashcroft v. Free Speech Coalition and Computer–Generated Images

¶ 12 As a general rule, pornography can be banned only if obscene. *See Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). However, in *New York v. Ferber,* the Supreme Court held that a state may proscribe the production or possession of child pornography whether or not the images are obscene. *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). This is because "[t]he *Miller* standard ... does not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children." *Id.* at 761, 102 S.Ct. 3348. Accordingly, "[s]tates are entitled to greater leeway in the regulation of pornographic depictions of children." *Id.* at 756, 102 S.Ct. 3348.

¶ 13 However, in *Ashcroft v. Free Speech Coalition,* the Supreme Court restricted the states' ability to prosecute "virtual child pornography." 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). According to *Ashcroft,* "virtual" child pornography does not qualify for heightened protection under *Ferber* because it is "speech that records no crime and creates no victims by its production." *Id.* at 250, 122 S.Ct. 1389.

¶ 14 Therefore, the Court held that § 2256(8)(D) of the Child Pornography Prevention Act ("CPPA") was unconstitutionally broad. That section prohibited "any visual depiction, including photograph, film, video, picture, ... or computer-generated image [that] is, or appears to be, of a minor engaging in sexually explicit conduct." *Id.* at 241, 122 S.Ct. 1389. Alinas claims that the jury

instructions in this case are similarly deficient.

¶ 15 The instructions in this case, taken verbatim from Utah Code section 76–5a–2, require that the jury, in order to convict, find that Alinas knowingly possessed child pornography, which was defined as "any visual depiction, photograph, picture or computer-generated image or picture of a minor engaging in sexually explicit conduct."

¶ 16 Alinas focuses his argument on the instructions' use of the term "computer-generated," a common phrase between the CPPA and the instructions in this case. He argues that the use of this language potentially allowed the jury to convict him for possessing "virtual child pornography," which *Ashcroft* forbids.

¶ 17 We disagree. *Ashcroft* appears to have based its holding on the "or appears to be" language of § 2256(8)(D).[1] The CPPA prohibited images that "appeared to be" children, but which were in fact not. *Ferber's* heightened protection, therefore, which is afforded for the purpose of eliminating child abuse, did not apply. *Ashcroft,* 535 U.S. at 241–42, 122 S.Ct. 1389. The jury instructions in this case did not allow conviction for possession of what "appeared to be" child pornography, but, rather, clearly required that the jury find that the pictures were of "a minor engaging in sexually explicit conduct." The instructions further defined "minor" as "a person younger than 18 years of age." The instructions allowed conviction only upon a finding that the pictures contained actual, and not virtual, children.

¶ 18 We also reject Alinas' argument that the instructions are invalid because a jury could conceivably convict a person for possession of "virtual" images under a mistaken belief that the term "computer-generated image" included such images. "[A] person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *Ferber,* 458 U.S. at 767,

---

1. Numerous courts have concluded, as do we, that *Ashcroft* was based on the "or appears to be" language of the CPPA. *See, e.g., United States v. Rodriguez–Pacheco,* 475 F.3d 434, 440 (1st Cir.2007) ("*[Ashcroft]* held that 18 U.S.C. § 2256(8)(B) was overbroad because of the 'or appears to be' clause.").

102 S.Ct. 3348. The images possessed by Alinas in this case were clearly of real children, far below the age of majority. These were not "virtual" images. In fact, Alinas' counsel conceded at oral argument that the images in this case do not appear to be either virtual or non-minors. Accordingly, the argument of the potential overbreadth of the term "computer-generated image" fails.[2]

### B. Adequacy of the Definition of "Sexually Explicit Conduct"

¶ 19 Alinas next argues that the jury instructions failed to adequately define the term "sexually explicit conduct." Taken from Utah Code section 76–5a–2(8)(f), the instructions defined the term as "the visual depiction of nudity or partial nudity for the purpose of causing sexual arousal of any person." Alinas argues that this definition violates *Ferber* because, according to that case, "nudity, without more[,] is protected expression." *Ferber*, 458 U.S. at 765 n. 18, 102 S.Ct. 3348. Alinas argues that, in order to qualify as "sexually explicit conduct," there must be, in addition to nudity, a depiction of some affirmative sexual act, such as intercourse, bestiality, masturbation, etc.

¶ 20 We disagree with Alinas' assertion now, as we did in *State v. Morrison*, 2001 UT 73, 31 P.3d 547. In *Morrison*, we concluded that section 76–5a–3(1), an earlier version of the analogous section of Utah's Sexual Exploitation of Children statute that contains nearly identical language as section 76–5a–2, was not unconstitutionally vague.[3] The "something more" than simple depictions of nudity, as required by *Ferber*, are the "two scienter requirements [of the statute]: the person must possess the proscribed material

both 'knowingly' and 'for the purpose of sexual arousal of any person.'" *Morrison*, 2001 UT 73, ¶ 11, 31 P.3d 547.

¶ 21 We also indicated that a court should look to the "purpose" of the depictions. If an image is "designed 'for the purpose of causing sexual arousal,'" the knowing possession of that image may properly be proscribed.[4] *Id.* ¶¶ 10, 12.

¶ 22 In this case, Alinas found the images on a web page called "Little Girls Extreme." There can be no question that the pictures were, at the very least, being distributed for the purpose of sexual arousal. The jury concluded that the child depictions, in this case, were intended for sexual arousal, and that determination was not unreasonable.

¶ 23 The definition of "sexually explicit conduct" contained in the jury instructions was not erroneous. The trial court could reasonably rely on our affirmation in *Morrison* of nearly identical language to that of the instructions here.

### II. THE INTRODUCTION OF ADULT PORNOGRAPHY

¶ 24 Like the prior issue, this issue was not preserved and is reviewed accordingly.

¶ 25 Alinas argues that the prosecution's introduction of the adult pornography into evidence tainted the jury's consideration of the child pornography. He argues that because the adult pornography was more sexually graphic than the child depictions, the presumption of arousal from those pictures would improperly overlap onto their consideration of the child depictions: specifi-

2. We note, however, that the term "computer-generated image" as contained in Utah Code section 76–5a–2 is properly defined as images of *real children* that are saved, loaded, or displayed on a computer or computer screen. "Computer-generated images" do *not* include virtual images, which are images that are digitally created by computer and which do not contain actual, real children. The State would be wise to include such defining language in future instructions to avoid potential violations of *Ashcroft.*

3. *See Morrison*, 2001 UT 73, ¶¶ 1 n. 1, 6–12, 31 P.3d 547 (upholding the 1985 version of section 76–5a–3(1), which then provided: "A person is guilty of sexual exploitation of a minor ...

[w]hen he knowingly ... possesses ... material ... depicting a nude or partially nude child for the purpose of causing sexual arousal of any person....").

4. We note that possession of such materials may be justified in limited circumstances. Such circumstances would include possession by a judge, prosecutor, defense counsel, and jury that is necessary as part of criminal proceedings. The possession of the materials in cases such as these is allowed because that possession does not "promote the sexual exploitation of children." *Ashcroft*, 535 U.S. at 240, 122 S.Ct. 1389.

cally, whether they were intended for sexual arousal. The State counters that by adopting the trial strategy he did, Alinas opened the door for the introduction of the adult exhibits.

¶ 26 At trial, Alinas contended that he possessed both the child and adult photographs not for sexual arousal but to explore his thwarted wishes and efforts to be a woman instead of a man.

¶ 27 By claiming that he possessed the pictures in order to view himself as a girl and as a woman, Alinas established a reasonable defense strategy. This strategy was intended to prevent the prosecution from establishing that he possessed the child exhibits "for the purpose of causing sexual arousal." The State introduced the adult exhibits to invite the jury to consider the plausability of Alinas' defense that he did not possess any of the pictures for the purpose of sexual arousal. By arguing that Alinas could only have possessed the adult photographs for the purpose of sexual arousal, the State sought to impeach Alinas' testimony.

¶ 28 In its closing statement, the prosecution stated, "[W]e have the adult photographs, not because there is any crime charged for those, because there is no crime in that. There is no crime here of adults.... [The adult images] tell you that when [Alinas] told you he's asexual and it had nothing to do with sexual arousal, look at those photographs. These are sexual photographs."

¶ 29 Alinas' defense strategy opened the door, and the State could reasonably counter that defense by impeaching his testimony. The prosecution properly limited the scope within which the jury was to consider the adult exhibits; that is, they were only there to show Alinas' sexual attraction to women,

contrary to his testimony. The admission of the adult exhibits was not clear error.

## III. PROVING THAT THE IMAGES WERE OF REAL CHILDREN UNDER THE AGE OF EIGHTEEN

■ ¶ 30 Alinas claims that the State failed to prove the age of the children depicted. He also claims that the State failed to prove that the images depicted real children. To qualify for regulation under *Ferber*, and to avoid violating *Ashcroft*, child pornography must depict a real, non-virtual minor. As such, Alinas argues that the only way the State can prove beyond a reasonable doubt that the pictures were of actual children under eighteen years of age is through the introduction of expert testimony. Because no expert testimony was given in this case, Alinas claims the State failed to meet its burden.

¶ 31 Alinas cites to no case that supports his claim, and we have found only cases that express the contrary view. For example, courts have generally held that the jury themselves, through visual examination, are capable of making the determination whether the children depicted are under eighteen years of age.[5] Likewise, every federal circuit court to address the issue has held that a state may prove that images of children are real, as opposed to virtual, merely by allowing the fact finder to examine the images themselves.[6]

¶ 32 We are of the same view. Whether an image depicts a virtual child or a real child is a question of fact for the jury. *United States v. Rodriguez–Pacheco*, 475 F.3d 434, 438 (1st Cir.2007). Also, whether the children depicted are minors is a question of fact for the jury. *United States v. Riccardi,*

5. *See, e.g., United States v. Riccardi*, 258 F.Supp.2d 1212, 1218 (D.Kan.2003) ("There is no requirement that expert testimony be presented in child pornography cases to establish the age of children in the picture."); *United States v. Villard*, 700 F.Supp. 803, 814 (D.N.J.1988) ("[T]he jury can examine the photographs in question and determine for itself whether the individual is under eighteen years of age."); *People v. Phillips*, 346 Ill.App.3d 487, 282 Ill.Dec. 48, 805 N.E.2d 667, 675 (Ill.App. Ct.2004) (quoting *People v. Thomann*, 197 Ill.App.3d 488, 143 Ill.Dec. 813, 554 N.E.2d 748, 755 (Ill.App.

Ct.1990)) ("[A] court does not need expert testimony to determine whether the participants are under age....").

6. *See United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir.2003) ("Juries are still capable of distinguishing between real and virtual images ...."); *see also United States v. Rodriguez–Pacheco*, 475 F.3d 434, 438 (1st Cir.2007) (stating that it is "universally accept[ed] ... that juries are capable of distinguishing between real and virtual images, without expert assistance").

**1052**

258 F.Supp.2d 1212, 1218 (D.Kan.2003). We afford such determinations deference.

¶ 33 In this case, both the jury and the trial judge independently concluded that the child exhibits depict real children. The jury was instructed to convict only if each child exhibit depicted "a minor engaging in sexually explicit conduct." They were further instructed that a "minor" is "a person younger than 18 years of age."

¶ 34 Applying these instructions, the jury found that each child exhibit depicted a real person younger than eighteen years of age. Additionally, the trial judge examined the child exhibits herself and determined that they "depict females with undeveloped breasts, naked or partially naked, and because the age of majority is 18 years of age, I think there is sufficient evidence to send [the child exhibits] to the jury." The determinations of the judge and jury in this case were reasonable. The factual determination by the jury is sufficient.

## IV. ENLARGED EXHIBITS

¶ 35 Alinas claims that he was prejudiced because the child exhibits were enlarged to 8 × 11 inches. He asserts that smaller, possibly black and white prints would have been just as probative but would not have had the prejudicial effect. This issue was not preserved and is reviewed accordingly.

¶ 36 "[T]he fact that evidence is prejudicial does not, by itself, render that evidence inadmissible." *State v. Ramirez*, 924 P.2d 366, 369–70 (Utah Ct.App.1996). Rather "if the evidence is prejudicial but is at least as probative ... it is properly admissible." *Id.* at 370 (quoting *State v. Taylor*, 818 P.2d 561, 571 (Utah Ct.App.1991)).

¶ 37 In this case, the trial court did not commit error in admitting the enlarged exhibits because the probative value of those exhibits outweighed any prejudice that may have resulted from their being enlarged. The probative value of the child exhibits is very high. The exhibits were the only evidence of the crime and were, in fact, the very essence of the crime. Enlarging the exhibits was helpful to the jury in determining whether the requirements of the statute were met, namely, were the subjects real and were they minors. Also, enlarging the exhibits helped the jury to determine if the pictures were intended for sexual arousal by showing, for instance, that the children were wearing makeup and that their genitals were exposed.

## V. INEFFECTIVE ASSISTANCE, DUE PROCESS, AND THE 23B MOTION

¶ 38 Alinas claims that the court of appeals violated his right to due process in denying his rule 23B motion. Alinas' 23B motion sought retrial to supplement the record on appeal with "comparable nude child depictions" that were presumably constitutional. The court of appeals held that Alinas was not entitled to remand because "the alleged omissions [were] apparent from the record," and because his theory for remand went "beyond the scope of rule 23B's purpose of supplementing the record with facts necessary to allow assertion of the ineffectiveness claims on direct appeal." We agree with the court of appeals.

¶ 39 Rule 23B allows an appellate court to remand a case to the trial court to supplement the record with facts that are unavailable but necessary to review a claim of ineffective assistance of counsel. If a claimant meets the requirements set forth in the rule, "[a] court *may* order that the case be temporarily remanded." Utah R.App. P. 23B (emphasis added).

¶ 40 We agree with the court of appeals that the record required no factual supplementation for a review of an ineffective assistance of counsel claim in this case. It is true that trial counsel failed to introduce similar, presumably legal, child depictions. However, the alleged omissions are apparent from the record, and additional exhibits were unnecessary.

¶ 41 Alinas claims that his trial counsel should have found pictures of nude children, located, perhaps, in public libraries or art museums, and introduced them to show that the images he possessed at the time of his arrest are not illegal. However, such a demonstration, presumably aimed at showing that the pictures in this case were not "ob-

scene" under a contemporary community standard, is not relevant to the charges at trial. *Ferber* makes clear that community standards do not apply to cases of child pornography. We do not require the State to show that child pornography violates the contemporary community standard, and a showing to the contrary by defense counsel would be irrelevant.

¶ 42 As we have said, it is the purpose for which the image is created that matters. *Morrison,* 2001 UT 73, ¶ 12, 31 P.3d 547. In this case, these images were clearly created and marketed for sexual arousal. Visiting such a website and downloading the child pornography it provides is "promot[ing] the sexual exploitation of children." *Ashcroft,* 535 U.S. at 240, 122 S.Ct. 1389. The introduction of depictions that lack the requisite creative intent would not aid the jury. Moreover, depictions that *were* made and marketed for a similar purpose would also be illegal. The court of appeals was correct: a remand for factual supplementation of the record is unnecessary to dispose of Alinas' ineffective assistance of counsel claim.

## CONCLUSION

¶ 43 The jury instructions in this case did not violate *Ashcroft* because they did not allow for conviction unless the pictures contained an image of an actual minor. No error, clear or otherwise, exists in the introduction of the adult pornography or in the admission of the enlarged child depictions. The jury was correctly charged to make the determination as to whether the images depicted real children and whether those children were minors.

¶ 44 Affirmed.

¶ 45 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice Wilkins' opinion.