THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALLAN M. THOMANN, Defendant-Appellant.

Fourth District   No. 4—89—0824

Opinion filed May 1, 1990.

Larry S. Mills, of Law Offices of Richard J. Doyle & Associates, of Danville, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

On June 15, 1989, defendant Allan Thomann was found guilty, following a bench trial in the circuit court of Vermilion County, of committing the offense of child pornography in violation of section 11—20.1(2) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1(2)). He subsequently was placed on probation. He now appeals, alleging numerous errors. We affirm.

On September 8, 1988, an information was filed alleging defendant committed five counts of child pornography. These counts were all based on the possession or dissemination on July 14, 1988, of a videotape portraying children under the age of 18 years involved in various sexual acts prohibited by the Code. (Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1.) A bench trial commenced on June 12, 1989.

The evidence establishes that Indiana State Police investigator Chris Hunt had been working in the field of the sexual exploitation of children for several years. Part of his investigations involved placement of personal ads in various sexually explicit magazines. One such ad was placed in the magazine entitled, "Video Xcitement." The ad indicated a "swinging couple" was wanting to exchange or purchase photos or videos. It further indicated they were looking for "tapes on family interests, male or female, slender types, little or no body hair." It gave an alias and a post office box for interested parties' responses.

On April 26, 1988, defendant responded with a letter which indicated he had read the ad and had a tape which might be of interest. It described the tape as "It is a copy of a tape shot by a father of his daughter and three of her friends (a girl and two boys)." Hunt did not get this from his post office box until July.

On July 11, 1988, Hunt answered by letter sent to defendant's post office box. On July 18, he received from the defendant another letter and the videotape in question. The letter explains that defendant tried to make a copy of the tape but was unhappy with the results

so he sent the original and would like it back. It also observed that the tape needed to be rewound to the beginning. Hunt again responded by letter and included some photographs which he took from a sexually explicit magazine. Defendant responded with another letter returning Hunt's pictures and including some of his own. Defendant telephoned the number Hunt gave him and left a message on Hunt's answering machine. On August 24, 1988, Hunt, after getting a number from directory assistance, called defendant's home and spoke with his father. Hunt was directed to call defendant at his place of business and he did so, leaving a message. Defendant returned Hunt's call, and Hunt taped the conversation.

In the conversation, defendant indicated he had the tape for several years. The following exchange occurred:

"[Hunt]: Boy, that's nice. That was in—that tape's in awfully good shape and I tell you, those—teenage girls, they—they know how to get it on there.

Defendant: Yeah, yeah, there's no question about it.

[Hunt]: And the—Did you put—Allan, I especially like those stills on the—on the back of it.

Defendant: You know, I had forgotten those were on it. Again, I did not do that. I need to—because you had mentioned it I need to take a look at that and see what that is, because I have forgotten. [Y]ou know, it's such a long segment that I'm never—I don't know if I have ever paid any attention to what was on that."

Later, the following transpired:

"[Hunt]: But let me do that, and I tell you what, I got to look through that tape one more time. I tell you, those teenage girls, they—I just got to think it looks like they're what, about fourteen or fifteen years of age.

Defendant: Oh, yeah, yeah, probably, that's exactly it.

[Hunt]: Oh, they're nice. Look at that, and I like those stills at the end again.

Defendant: Okay."

On September 8, 1988, the present information was filed and a search warrant was authorized and executed upon defendant's home. Defendant, not wishing to upset his parents, who lived with him, directed the police to his bedroom, telling them that what they wanted was there. Found in the room was a briefcase containing numerous items, including two of the letters Hunt sent. Also recovered were three magazines, "6-16," "Nudist Children and Their Parents," and "Young and Naked," which depict children, with and without their

parents, naked. These did not involve any sexual activity. The police found in an envelope several pictorial advertisements with order forms for various graphic sexual matters, including "Lolita" magazines, which depict children in sexual activities.

The videotape sent to Hunt was approximately two hours long and was played for the court. It appeared to be a homemade video. The first portion involved a film of a sexual nature. It was followed by several still photographs depicting children in various sexual poses. After several minutes of "snow," the end of the movie "Elephant Man" came on. Apparently the maker of the video used a tape of that movie to record on.

Dr. Phillip Merk observed the tape as it was played. He is a board-certified pediatrician who teaches at Indiana University and works part time with the sexual abuse clinic involving sexually abused children. He also teaches seminars concerning such children throughout the State. He explained it is possible to tell the age range of children using the Tanner method, based on development of the genitalia, the presence of pubic hair, and the development of the female's breasts. After viewing the tape, he rendered an opinion concerning the ages of the various participants in the still photos, which placed most of them in the range of 8 years to 14 years. He was unable to make any age determination on the participants in the action film portion of the tape.

Defendant explained in his testimony that he has a collection of over 50 videotapes on a wide variety of subjects. Some of these, 8 to 10 in number, are of a sexually explicit, adult nature. He received the tape in question approximately five years earlier. It came with some other tapes which he had requested. This one was unsolicited. When he first received the tape he viewed it, but he only viewed about the first 15 or 20 minutes of it. After that, he put it away and never looked at it again. He explained this is the reason the tape needed to be rewound by Hunt. He never saw the portion containing the still photos.

He stated that the taped conversation with Hunt took place around 5 p.m. on a workday. He explained that he owns and operates a radio station and that the office is very hectic around that time. He maintains he was distracted during much of the call and was not paying attention. He was simply being agreeable with Hunt, and this is why he agreed with some of Hunt's statements.

He also explained that the Lolita advertisements were totally unsolicited and he had received those several years prior. At first he threw them in the garbage but, upon consideration, he became con-

cerned his parents would see them. He returned the ads to his briefcase and forgot about them. He explained he never tried to copy the tape and he placed that language in his letter as a means of salesmanship. Defendant then presented the testimony of numerous witnesses as to his character and community involvement.

The court found defendant guilty of one count and not guilty of four others. It subsequently placed defendant on 18 months' probation and fined him $7,500. Defendant now appeals, alleging (1) the search warrant was defective for failing to establish probable cause to search defendant's home; (2) the search warrant was defective for failing to particularly describe the items to be seized; (3) the videotape was improperly introduced into evidence; and (4) defendant was not proved guilty beyond a reasonable doubt.

Defendant initially argues the search warrant executed on his residence was invalid and the court erred by denying his motion to suppress the evidence seized pursuant to the search. He specifically argues that there was no probable cause to search his residence and that the warrant fails to properly describe the items to be seized.

On September 8, 1988, the State procured an arrest warrant for defendant for the instant offense and, at the same time, sought the search warrant in question. Investigator Hunt gave oral testimony for the basis of the search warrant. This testimony was substantially similar to his trial testimony. It included the exchange of letters, phone conversations, and a brief description of the videotape.

Defendant observes that before a search warrant may be issued, a showing must be made that the facts and circumstances are sufficient to warrant a reasonable person to believe that an offense has occurred and that evidence thereof is at the place to be searched. (*People v. Stewart* (1984), 104 Ill. 2d 463, 476, 473 N.E.2d 1227, 1232.) He argues that Hunt's testimony fails to establish any connection between his residence and the criminal offense. He observes Hunt testified that he always dealt with defendant through a post office box number or on the telephone at the radio station. Defendant maintains that the search warrant is therefore defective for authorizing a search of his residence, and the court should have granted the motion to suppress.

■■ ■ Our supreme court has observed that in reviewing the sufficiency of a search warrant complaint it is only the probability, and not a *prima facie* showing, of criminal activity which is the standard of probable cause. (*Stewart*, 104 Ill. 2d at 475, 473 N.E.2d at 1232, quoting *People v. Gacy* (1984), 103 Ill. 2d 1, 21, 468 N.E.2d 1171, 1177.) The affidavits or evidence presented in support of a search

warrant must be tested and interpreted in a commonsense and realistic manner. (*People v. Parker* (1968), 42 Ill. 2d 42, 45, 245 N.E.2d 487, 489; *Stewart*, 104 Ill. 2d at 475-76, 473 N.E.2d at 1232, quoting *Gacy*, 103 Ill. 2d at 21, 468 N.E.2d at 1177.) The courts, in deciding the question of probable cause, are not disposed to be unduly technical but, rather, the probabilities considered are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. (*People v. Free* (1983), 94 Ill. 2d 378, 400, 447 N.E.2d 218, 228.) The determination of probable cause by the issuing court should be paid great deference by the reviewing court. *Stewart*, 104 Ill. 2d at 476, 473 N.E.2d at 1232, quoting *Gacy*, 103 Ill. 2d at 21, 468 N.E.2d at 1177.

■■ ■ Here, the evidence presented the court establishes that defendant mailed a videotape involving child pornography to Hunt. Defendant's letters described some of the activity on the tape and indicated that this is a "loaner," which he wanted back. Defendant also indicated he and his wife were voyeurs, and that he wanted to know if Hunt had similar material. This would indicate to a reasonable person that defendant was interested in watching such material. While Hunt only mailed items to a post office box number, it is apparent that defendant would not be able to store his items there. An application of common sense would lead a reasonable person to the conclusion that since defendant has indicated he and his wife are voyeurs, and since such property cannot be stored in a post office box, it is most probable that similar property is kept at his residence, where viewing would most likely take place. Although it may not be easy to determine the existence of probable cause in any given case, the resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded warrants. (*Stewart*, 104 Ill. 2d at 477, 473 N.E.2d at 1233.) In reviewing the evidence in a commonsense and realistic fashion, we believe it is sufficient to justify issuance of the warrant for defendant's residence.

■■ Further, accepting defendant's argument that probable cause was lacking, we find the good-faith exception to the exclusionary rule to be applicable. In *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, the Court modified the exclusionary rule to allow the State to use evidence obtained by officers acting in good faith and in reasonable reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be unsupported by probable cause. This exception was adopted and applied by our supreme court in *Stewart* (104 Ill. 2d at 477, 473 N.E.2d at 1233).

■■ Defendant argues the exception should not apply because the

warrant is facially deficient and Hunt misled the court by withholding some information and supplying other misleading information. (See *People v. Bohan* (1987), 158 Ill. App. 3d 811, 818, 511 N.E.2d 1384, 1389.) However, a review of the warrant establishes that it is not so facially deficient that the executing officers cannot reasonably presume it to be valid. (*Bohan*, 158 Ill. App. 3d at 819, 511 N.E.2d at 1389.) We also observe that a mechanism has been created pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, to provide a hearing to protect a defendant against perjurious warrant applications. (*People v. Lucente* (1987), 116 Ill. 2d 133, 150, 506 N.E.2d 1269, 1276.) Defendant pursued such a hearing in the trial court. However, our review of Hunt's probable-cause testimony, in view of his trial testimony, fails to convince us that he misled the court with information he knew was false or, but for his reckless disregard for the truth, should have known was false. See *Bohan*, 158 Ill. App. 3d at 818, 511 N.E.2d at 1389.

■ Defendant also maintains the warrant is defective because it does not sufficiently describe with particularity the items to be seized. Defendant raised a number of objections to the search warrant at the trial level, but this was not one of them. Nor was this allegation included in defendant's post-trial motion. Accordingly, this issue is properly considered waived. *People v. Enoch* (1988) 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124, 1129-30, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.

■ A trial court's determination on a motion to suppress will not be disturbed unless it is manifestly erroneous. (*Free*, 94 Ill. 2d at 401, 447 N.E.2d at 229.) We find no such difficulty in this case with the trial court's denial of defendant's motion.

Defendant next contends the videotape was improperly admitted into evidence due to a lack of foundation. There is no dispute that the videotape is the one defendant mailed Hunt. Defendant observes that a sufficient foundation for the introduction of a photograph or videotape is made by testimony of any person with personal knowledge of the object of the photograph or tapes at a time relevant to the issues, that the photograph or tape is a fair and accurate representation of the object at that time. (*People v. Hebel* (1988), 174 Ill. App. 3d 1, 27, 527 N.E.2d 1367, 1384, *cert. denied* (1989), 489 U.S. 1085, 103 L. Ed. 2d 848, 109 S. Ct. 1544.) He further observes that there is no testimony that the videotape in this case truly and accurately depicts what it purports to depict. Accordingly, he insists the foundation is improper and the tape should not have been introduced into evidence. We disagree.

We have no disagreement with defendant's general proposition of law. It is his application of this principle with the facts of the present case with which we disagree. As the trial court so astutely put it, defendant is arguing apples and oranges.

The authority defendant relies upon addresses the circumstance where the pictures are used as demonstrative evidence of a scene or object (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §401.8, at 125 (4th ed. 1984)) or, more recently, as substantive evidence of a crime (*Hebel*, 174 Ill. App. 3d at 28-29, 527 N.E.2d at 1384-85). Under each circumstance, the pictures are portraying a scene or incident for the court. Accordingly, it is necessary that the evidence establish they accurately portray this incident or scene.

However, in the present case, defendant is convicted of disseminating a videotape which portrayed children involved in sexual acts. Thus, it is the videotape itself which is the critical piece of evidence. The tape is not relevant as demonstrative evidence of the incident as it was actually filmed or as substantive evidence of any criminal offense that occurred at that time. The dissemination of the videotape itself is the criminal offense. Since we are not concerned with the underlying incident or the scene that the tape portrays, it is not necessary for testimony to be presented that the tape fairly and accurately depicts the scene.

■ Defendant insists that to lay a proper foundation the State must show that the videotape accurately portrays persons under the age of 18. He maintains the failure to do so would "allow persons to be convicted of child pornography, not when they possess or disseminate a photograph or videotape of someone who *is* under 18 but merely when *they look to be under 18*." However, defendant is confusing the evidence necessary for the foundation of the tape with that necessary for a conviction.

In *People v. Schubert* (1985), 136 Ill. App. 3d 348, 483 N.E.2d 600, the defendant was convicted under a predecessor of the current child pornography statute for possessing photographs. He maintained the State must present independent evidence of the children's ages to support the conviction. The court disagreed, observing the pictures speak for themselves. (*Schubert*, 136 Ill. App. 3d at 354, 483 N.E.2d at 605.) The court explained:

> "Congressional investigations indicate that Chicago is a major center for producing and disseminating child pornography. However, it is often impossible to determine the source of the child pornography. It is quite common for photographs made in the United States to be sent to foreign countries to be repro-

duced and then returned to this country to give the impression of foreign origin. [Citation.] The identity of children depicted and their whereabouts are frequently unknown. Requiring law enforcement officials to track down and identify the depicted children to successfully prosecute a child pornography case would destroy the effectiveness of the child pornography statute in preventing the sexual exploitation of children. Therefore, the legislature has vested the trier of fact with the function of determining the age of the child depicted." *Schubert*, 136 Ill. App. 3d at 353, 483 N.E.2d at 604-05.

Thus, it is clear that the determination of the age of the participants is to be made by the trier of fact during the proceeding as a necessary element of the offense. This determination is not a part of the necessary foundation for the introduction of the tape. All the State must show as a foundation is that the tape introduced into evidence is the tape Hunt received from the defendant and that this tape has not been altered in any fashion since then. As noted, there is no dispute that this was done. Accordingly, there is no doubt that it was properly introduced into evidence.

Finally, defendant maintains he was not proved guilty beyond a reasonable doubt. He believes the evidence fails to establish the participants are under 18 years of age and that he had knowledge the still photographs which Dr. Merk identified as involving underage children were on the tape.

■■ ■ A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, 676.) When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) Once the defendant has been found guilty of the charged crime, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.) The relevant question is whether, if after viewing the evidence in such a fashion, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.

■■ The sole testimony concerning the age of the participants

was the testimony of Dr. Merk. Defendant believes this testimony is impeached by the possibility that the photos were airbrushed or that the participants have a hormonal problem. However, there is no evidence of either of these occurring. While these are possibilities, their likelihood goes to the weight of Dr. Merk's testimony. The court had the opportunity to observe the tape and listen to the testimony. In fact, a court does not need expert testimony to determine whether the participants are underage, but can rely on its own everyday observations and common experiences in making this determination. (*Schubert*, 136 Ill. App. 3d at 354, 483 N.E.2d at 605.) Accordingly, we can find no error with the court's finding.

Similarly, we have no difficulty with the court's determination concerning defendant's knowledge. The length of possession of the tape, the ad to which defendant responded, the letters, the phone conversation, and everyday experiences and observations support this conclusion. Admittedly, defendant testified to the contrary and offered explanations for various facts. However, some of these explanations are less than compelling. Further, a trial court is not required to accept a defendant's testimony. In a bench trial, it is the function of the court to determine the credibility of witnesses and the weight that should be given to their testimony. (*People v. Molstad* (1984), 101 Ill. 2d 128, 133, 461 N.E.2d 398, 401.) It is not for our court to substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.) Considering all the evidence in the light most favorable to the prosecution, we find the evidence sufficient to sustain the conviction.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.