No. 3--02--0506 

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2004

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) of the 21st Judicial Circuit

                              ) Kankakee County, Illinois     

) 

Plaintiff-Appellee,    ) 

)

v. ) No.  01--CF--551 

)

RUDY PHILLIPS,                ) Honorable Clark Erickson,    

                              ) Judge, Presiding.

Defendant-Appellant. )

     JUSTICE SCHMIDT delivered the opinion of the court:

Defendant, Rudy Phillips, was found guilty on three counts via a bench trial of violating Illinois's child pornography statute.  720 ILCS 5/11--20.1 (West 2000).  Defendant appeals the verdict of the Kankakee County circuit court.  

BACKGROUND

On October 11, 2001, defendant took his computer to a repair shop for repairs.  The owner of the shop had originally built the computer for defendant.  Defendant claims he only asked the owner to fix various sound problems he was having on the computer and also to fix the Windows operating system.  

The shop owner claimed that the defendant asked him to fix the computer's video, audio and modem.  In an attempt to fix these problems, the shop owner reinstalled Windows Media Player.  Then, while testing the computer's audio and video, the owner clicked on "My Documents," which is part of the default desktop.  The owner accessed the first document that contained a MPG video file during this test.

The video selected by the shop owner "appeared to be an 8 to 10 year-old girl performing oral sex on an older man."  Upon seeing this video, the shop owner called a friend at the Bradley police department.  Detective Buhrmester arrived approximately 20 minutes later at the repair shop.  The shop owner testified that he then asked Detective Buhrmester to "come and take a look at it."  The shop owner then showed Detective Buhrmester the video.

Detective Buhrmester then called two more detectives, who arrived approximately 45 minutes later.  It was decided that the defendant would be allowed to pick up his computer, and after he did so, the shop owner would call the detective’s cellular phone.  The defendant arrived, picked up his computer and then was driven away from the repair shop by a friend.  The police stopped the car carrying the defendant.  After identifying the defendant, they asked if the computer was his and he responded affirmatively.  Defendant was then arrested and his computer seized.  Defendant was told that he was being investigated in relation to possession of child pornography.  

Defendant was taken to the Bradley police department as the police believed he lived in Bradley.  When it was discovered that he actually lived in Kankakee, the Bradley police contacted the Kankakee police department and two detectives from that department arrived at the Bradley police station.  Defendant was read his 
Miranda
 rights from a preprinted form which he then signed.  The defendant was again informed that he was being investigated for suspected possession of child pornography.

The detectives asked defendant whether he was putting child pornography on the Internet, taking pictures of children and posting pictures on the Internet, or merely collecting pictures that were already on the Internet.  The defendant stated he was not taking photographs, but merely "seeing how many he could collect."  The detectives then asked defendant if he had any child pornography at his house to which he responded yes.

The defendant then signed a consent to search form for his residence in Kankakee.  He was taken to his house, where he used his key to allow the detectives entry.  The detectives asked him where the photography was located and he pointed to the bedroom.

While in the bedroom, defendant gave detectives various printouts that appeared to be of images downloaded from the Internet.  Defendant also handed floppy disks to the detectives.  The detectives loaded some of the disks into a police department laptop computer and viewed images stored on the disks.  The detectives believed these images were of children under the age of 18 and as young as 3 years of age engaged in sexual acts.  In total, 110 diskettes were collected from defendant's residence.

Defendant was taken back to the police station and reinterviewed.  He was again asked what he had been doing with the child pornography found at his residence.  He responded that he had been exchanging child pornography with individuals over the Internet and posting photographs in a community website.

No search warrants were ever obtained for anything seized at the defendant's house or for the computer taken to the repair shop.

The defendant was convicted in a bench trial of possessing with an intent to disseminate the following: child pornography depicting a child engaged in the act of sexual intercourse with another person (720 ILCS 5/11--20.1(a)(2)(i) (West 2000)); child pornography depicting a child engaged in an act of sexual contact involving the mouth of the child and sex organs of another (720 ILCS 5/11--20.1(a)(2)(ii) (West 2000)); and child pornography depicting a child engaged in an act of sexual contact involving the sex organ of the child and the mouth of another person (720 ILCS 5/11--20.1(a)(2)(ii) (West 2000))
.   On appeal, defendant raises three issues claiming they mandate a reversal of his conviction.  

First, he claims Illinois's child pornography statute is unconstitutionally overbroad and therefore could not adequately apprise him of the charges against him.  Second, defendant claims law enforcement officials violated his right to be free from unreasonable searches and seizures.   Finally, defendant believes the State did not provide sufficient evidence to prove him guilty beyond a reasonable doubt.  Included in this final argument is the contention that the State failed to admit any evidence that established the images depicted were of an actual child or that defendant possessed the requisite intent to disseminate child pornography.  For the reasons set forth below, we affirm defendant's conviction. 

ANALYSIS

On appeal, defendant attacks the sufficiency of the charging document for the first time.  He initially claims that his "conviction for possession of child pornography with intent to distribute should be reversed because the indictment was based on an unconstitutional statute, and the vague and disjunctive language contained in the indictment did not adequately apprise the defendant of the charges against him."  Because of this, he claims the indictment did not allow him to adequately prepare a defense nor would it serve as a bar to double jeopardy.  He concludes by alleging that his trial attorney's failure to object to the sufficiency of the charging instrument and failure to request a bill of particulars denied him his right to effective assistance of counsel.  

While attacking the indictment, defendant claims Illinois's child pornography statute is unconstitutional.  We review the constitutionality of a criminal statute 
de
 
novo
.  
People v. Robinson
, 172 Ill. 2d 452, 667 N.E.2d 1305 (1996).  Defendant claims Illinois's statute is "nearly identical" to the statute held unconstitutionally overbroad in 
Ashcroft v. Free Speech Coalition
, 535 U.S. 234, 152 L. Ed. 2d 403, 122 S. Ct. 1389 (2002).  After the defendant filed his appeal and his briefs in this matter, our supreme court directly addressed this issue in 
People v. Alexander
, 204 Ill. 2d 472, 791 N.E.2d 506 (2003).  

In 
Alexander
, our supreme court found that section 11--20.1(f)(7) of the Criminal Code of 1961 (720 ILCS 5/11--20.1(f)(7) (West 2000)) was "constitutionally infirm" based upon 
Ashcroft v. Free Speech Coalition
.  
Alexander
, 204 Ill. 2d at 485.  
Alexander
 holds section 11--20.1(f)(7) is unconstitutional to the extent it bans child pornography involving virtual children.  However, it specifically holds that "sections 11--20.1(a)(1) and 11--20.1(a)(6) prohibit, 
inter alia
, making and possessing sexually explicit computer depictions of any actual child under 18 years of age.  Accordingly, these sections pass strict scrutiny
."  
Alexander
, 204 Ill. 2d at 486.  

The 
Alexander
 court, while discussing the same argument that defendant makes here, noted "the defendant's argument is essentially a flawed syllogism:  
Ashcroft
 invalidated content-based restrictions on virtual child pornography; virtual child pornography often contains computer-graphic images; therefore, 
Ashcroft
 invalidated restrictions on computer depictions of child pornography.  But not all computer depictions of child pornography are virtual child pornography."  
Alexander
, 204 Ill. 2d at 486.

Finally, the 
Alexander
 court held that "
Ashcroft
 addressed only the question of whether a criminal prohibition of virtual child pornography-child pornography produced without using actual children-violated the first amendment.  It did not invalidate all child pornography laws."  
Alexander
, 204 Ill. 2d at 487.  

The 
Alexander
 court found that sections 11--20.1(a)(1) and 11--20.1(a)(6) passed strict constitutional scrutiny.  These sections deal with making child pornography in which children are engaged in any act of sexual intercourse (section 11--20.1(a)(1))
 and are bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual conduct (section 11--20.1(a)(6))
.

The defendant at bar was charged with two counts of violating section 11--20.1(a)(2), which deals with the reproduction and dissemination of actual child pornography.  The language contained in section 11--20.1(a)(2) regarding the "depiction by computer of any child" is identical to that in section 11--20.1(a)(1).  720 ILCS 5/11--20.1(a)(1), (a)(2) (West Supp. 2001).  Applying 
Alexander
, we hold that section 11--20.1(a)(2) also passes strict constitutional scrutiny.

Defendant's second attack on the indictment claims that "the vague and disjunctive language in the indictment did not allow the defendant to adequately prepare a defense" nor did the indictment serve as a bar to double jeopardy.  Defendant raises these issues for the first time on appeal.  

When the sufficiency of an indictment is attacked for the first time on appeal, it will be found to be sufficient if the indictment apprised the accused of the precise offense charged with enough specificity to allow preparation of his defense and allow pleading a resulting conviction as a bar to the future prosecution arising out of the same conduct.  
People v. DiLorenzo
, 169 Ill. 2d 318, 662 N.E.2d 412 (1996).  

Defendant claims that the indictment's use of the phrase "photograph or other similar visual reproduction or depiction by computer" in the charging instrument was an impermissible phrasing in the disjunctive.  Defendant continues that "the disjunctive nature of the indictment made it impossible for the defendant to adequately challenge the State's evidence, as he had to necessarily guess what images he would have to confront at trial."  Defendant concludes this line of reasoning by noting that "the police recovered from 500 to 3,000 images of alleged child pornography" from his residence but "only charged him with three vague counts that did not specify how many images were charged" in each count.  The defendant then surmises that since the indictment did not specify which of the 500 to 3,000 images were associated with each count, the resulting convictions could not be used as a bar against prosecution for other images "found at the defendant's home, but not introduced at trial."  We disagree.  

The three counts charging the defendant read as follows:  

"COUNT I

That on or about the 11th day of October,

2001, in the County of Kankakee and State of          

Illinois, RUDY PHILLIPS a/k/a RUDOLPH PHILLIPS, 

Defendant, committed the offense of CHILD 

PORNOGRAPHY, in that said defendant, with the 

knowledge of the nature or content thereof, 

possessed, with intent to disseminate, a 

photograph or other similar visual reproduction 

or depiction by computer, of a child whom he 

knew or reasonably should have known to be under 

the age of 18, actually or by simulation engaged 

in an act of sexual intercourse with another 

person, in violation of Chapter 720, Paragraph 

5/11--20.1(a)(2)(i) of the Illinois Compiled 

Statutes.

COUNT II

That on or about the 11th day of October,

2001, in the County of Kankakee and State of

Illinois, RUDY PHILLIPS a/k/a RUDOLPH PHILLIPS,

Defendant, committed the offense of CHILD

PORNOGRAPHY, in that said defendant, with the

knowledge of the nature or content thereof,

possessed, with intent to disseminate, a 

photograph or other similar visual reproduction

or depiction by computer, of a child whom he

knew or reasonably should have known to be under

the age of 18, actually or by simulation engaged

in an act of sexual contact involving the mouth

of the child and the sex organs of another 

person, in violation of Chapter 720, Paragraph

5/11--20.1(a)(2)(ii) of the Illinois Compiled

Statutes.

COUNT III

That on or about the 11th day of October,

2001, in the County of Kankakee and State of

Illinois, RUDY PHILLIPS a/k/a RUDOLPH PHILLIPS,

Defendant, committed the offense of CHILD

PORNOGRAPHY, in that said defendant, with the

knowledge of the nature or content thereof,

possessed, with intent to disseminate, a 

photograph or other similar visual reproduction

or depiction by computer, of a child whom he

knew or reasonably should have known to be under

the age of 18, actually or by simulation engaged

in an act of sexual contact involving the sex

organ of the child and the mouth of another

person, in violation of Chapter 720, Paragraph

5/11--20.1(a)(2)(ii) of the Illinois Compiled

Statutes."

Defendant contends that since each count uses the phrase "
a photograph or other similar visual reproduction or depiction by computer
," he was only in essence charged with possessing three pieces of child pornography.  (Emphasis added.)  This, defendant claims, confused him to such a degree that he could not prepare a proper defense since he actually possessed approximately 3,000 pieces of child pornography.  While defendant may have been more comfortable with a 3,000-count indictment as opposed to a three- count indictment, he cites no law which mandates that he be charged with one count for every image he possessed.

Clearly, count I, by its use of the language "of a child whom he knew or reasonably should have known to be under the age of 18, actually or by simulation engaged in an act of sexual intercourse with another person, in violation of Chapter 720, Paragraph 5/11--20.1(a)(2)(i) of the Illinois Compiled Statutes," adequately apprised defendant that he would have to prepare a defense in response to his possession of child pornography in which children were engaged in intercourse with another person.  Similarly, count II adequately informed the defendant that he would have to prepare a defense for his possession of child pornography in which children were "engaged in an act of sexual contact involving the mouth of a child and the sex organs of another person, in violation of Chapter 720, Paragraph 5/11--20.1(a)(2)(ii) of the Illinois Compiled Statutes."  The final count also adequately apprised defendant that he would have to prepare a defense for possession of child pornography in which a child was "engaged in an act of sexual contact involving the sex organ of the child and the mouth of another person, in violation of Chapter 720, Paragraph 5/11--20.1(a)(2)(iii) of the Illinois Compiled Statutes."  It could not have been any clearer to defendant that he would have to prepare a defense against the accusations that he possessed images fitting into these three categories.

Defendant contends that he was denied his right to effective assistance of counsel as his trial counsel failed to object to the sufficiency of the charging instrument.  Our finding that the indictment was sufficient disposes of this contention. 

Defendant argues that law enforcement officials violated his right to be free from unreasonable search and seizure by conducting a nonconsensual, warrantless search and seizure of his computer.  As the defendant does not dispute the trial judge's determinations as to the facts or credibility of the witnesses, we review the questions regarding the reasonableness of the warrantless search 
de novo
. 
People v. Sims
, 192 Ill. 2d 592, 736 N.E.2d 1048 (2000).  

Defendant acknowledges that the initial viewing of the pornographic video involving a child was not done by a government official but was the act of a private citizen.  Defendant concedes that law enforcement officers do not violate the fourth amendment where they conduct a subsequent search of the same material already seen by a private actor.  
United States v. Jacobsen
, 466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984).  However, defendant urges this court to hold that the video viewed by the computer technician in this matter was stored in such a highly private place (
i.e.
, the hard drive of defendant's computer) that its viewing by a private citizen violates the fourth amendment.  We will not.  There was no search of defendant’s hard drive by the technician.  While attempting to determine whether he had properly repaired defendant’s computer, the technician accessed the first video listed on defendant’s desktop.  

As noted above, searches by private individuals do not come within the scope of the fourth amendment.  
United States v. Jacobsen
, 466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984).  Once a private citizen has observed evidence of child pornography and officers view the evidence while in a location where they have a right to be, the defendant has no legitimate expectation of privacy at that point and time.  
People v. Hebel
, 174 Ill. App. 3d. 1, 527 N.E.2d 1367 (1988).  If an inspection by the police does not intrude upon a legitimate expectation of privacy, then there is no search for which a warrant is required.  
Hebel
, 174 Ill. App. 3d at 25.  

In the case at bar, once the computer technician viewed the video involving a little girl performing oral sex on an adult male, the defendant had no legitimate expectation of privacy in that video.  The police were legally in the repair shop when the technician showed them that video.  Therefore, no warrant was required for the police to view that video.  While the defendant offers numerous alternative arguments as to why the police officer's actions with regard to the initial video violate his fourth amendment rights, these additional arguments ignore the fact that no protected privacy interest remains after law enforcement officials have lawfully viewed that which is illegal.  
Illinois v. Andreas
, 463 U.S. 765, 77 L. Ed. 2d 1003, 103 S. Ct. 3319 (1983).  Therefore, the subsequent downloading, copying onto diskette, and playing of the video in open court without a warrant or consent does not violate defendant's fourth amendment rights.

After viewing that video, the police had probable cause to effectuate a public arrest without a warrant. 

The 
Hebel
 court found that law enforcement officials, after having lawfully viewed the photographs, and having determined that they constituted evidence of child pornography, were entitled to seize them from defendant without further justification.  
Hebel
, 174 Ill. App. 3d at 25.  Similarly, once the officers viewed the initial video and determined that it constituted evidence of child pornography, they were entitled to seize the computer which contained that video.  

Defendant urges us to find that the warrantless search and seizure of the nearly 3,000 images of child pornography from his residence violated his fourth amendment rights.  He makes this claim after knowingly signing a consent to search form applicable to his residence.  He claims that police, while at the computer repair shop and after having viewed the initial video, conducted a warrantless and impermissible search of additional images stored on the defendant's hard drive.  However, defendant claims that since the police impermissibly knew of and possessed these images prior to 
his giving consent to search his residence, his consent was not truly voluntary.  

Defendant relies on 
Brown v. Illinois
, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975); 
People v. Koniecki
, 135 Ill. App. 3d 394, 481 N.E.2d 973 (1985), and other cases which have held that the taint of illegal police conduct can be so pervasive that it negates any subsequent consent to search given by a defendant.  This is so because the taint of illegal activity renders otherwise seemingly voluntary consent truly involuntary.

Here, defendant notes in his brief that he "does not challenge that the consent was voluntary."  However, he believes his consent did not "purge" the tainted conduct of the police when allegedly viewing files in addition to the initial file to which they were directed by the repair shop technician.  Defendant ignores the fact that the trial court specifically found "
there was no taint
."  (Emphasis added.)  The trial court, while admitting there was conflicting testimony present, found that in all likelihood the only file viewed by the police prior to defendant signing the consent to search was the initial file to which they were directed by the repair technician.

The additional files found on defendant's computer were suppressed, not because they were illegally viewed by the police prior to the consent to search being signed, but because the consent to search only applied to defendant's residence and no search warrant was issued or consent obtained that would allow the police to search the hard drive of the computer which was at the police station, not at defendant's home.  Therefore, as the trial judge correctly noted,  there was no taint, and we need not delve into a 
Brown
 or 
Koniecki
 analysis.  

Finally, defendant maintains that the State failed to introduce evidence sufficient to prove him guilty beyond a reasonable doubt.  Specifically, defendant claims the State did not introduce evidence that proved the children in the images he possessed were actually children and not either virtual children or adults with a hormone deficiency.  Defendant also argues that there was insufficient evidence to find that he had the requisite intent to disseminate images of child pornography. 

We must consider all the evidence introduced at trial in a light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Wittenmyer
, 151 Ill. 2d 175, 601 N.E.2d 735 (1992).  We must not overturn criminal convictions on review unless the evidence is so improbable or unsatisfactory that it creates reasonable doubt as to the defendant’s guilt.  
People v. Collins
, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). 

Defendant claims the "State produced no evidence that the images found on the defendant's computer were of actual children."  The defendant's reasoning parallels that of the defendant in 
People v. Thomann
, 197 Ill. App. 3d 488, 554 N.E.2d 748 (1990), in which that defendant claimed that some type of expert testimony needed to be introduced prior to admitting a videotape depicting a child under the age of 18 involved in a sexual act.  That defendant continued that without the expert testimony, a person could be convicted of child pornography "'not when they possess or disseminate a photograph or videotape of someone who 
is
 under 18 but merely when 
they look to be under 18
.'"  (Emphasis in original.)  
Thomann
, 197 Ill. App. 3d at 497.  In addressing this issue, the 
Thomann
 court held that "a court does not need expert testimony to determine whether the participants are under age, but can rely on its own everyday observations and common experiences in making this determination."  
Thomann
, 197 Ill. App. 3d at 499, citing 
People v. Schubert
, 136 Ill. App. 3d 348, 483 N.E.2d 600 (1985).  

The initial video viewed by the repair technician and several other videos and images taken from the defendant's residence were viewed by the trier of fact.  The trial judge, as  trier of fact, found that these were clearly images of real children "well under the age of 18" and not computer-generated images.  We have fully reviewed the evidence.  
At least as to these images, we are satisfied that everyday observations and common experiences can be relied upon by the trier of fact in reaching this determination.  Having viewed the images, we, too, have no doubt that these images depict real children.  The concerns raised in the dissent, however, do give pause.  The dissent questions whether "everyday observations and common experience" are sufficient to prove that the children depicted are real as opposed to computer-generated images.  The dissent notices the congressional findings quoted in both 
Alexander
 and 
Ashcroft
 that "new photographic and computer imaging technologies have made it possible to produce visual depictions of what 
appear
 to be children engaging in sexually explicit conduct that are 
virtually
 
indistinguishable
 from images of actual children engaging in such conduct."  (Emphasis in original.)  Slip opinion at 
     
.  

The courts that have dealt with this very question since 
Ashcroft
 have all found that juries and trial judges, as finders of fact, are still capable of distinguishing between real and virtual images.  
United States v. Kimler
, 335 F.3d 1132, 1142 (10th 
Cir. 2003); 
United States v. Deaton
, 328 F.3d 454, 455 (8th
 Cir. 2003) (
per curiam
) (citing 
United States v. Vig
, 167 F.3d 443, 449-50 (8th
 
Cir. 1999); 
United States v. Hall
, 312 F.3d 1250, 1260 (11th Cir. 2003), cert. denied, 
    
 U.S. 
    
, 155 L. Ed 2d 502, 123 S. Ct. 1646 (2003).  While imaging technology might be good and getting better, it has not yet arrived at the point where it is impossible to tell the difference between depictions of real children and virtual images.  See 
Kimler
, 335 F.3d at 1142.  Until technology advances to the stage, we hold, as has every other court dealing with this issue, that the question is still one left to the common experience of the trier of fact.

Finally, defendant urges us to reverse his conviction, claiming it was predicated upon an unconstitutional presumption contained in section 11--20.1(b)(4).  While there is no doubt that said section contains a presumption that possession of more than one of the same image manifests an intent to disseminate them, we need not reach this issue as it is clear that the trial court did not rely on this presumption.

The trial court made it abundantly clear that its finding that the defendant possessed the requisite intent to disseminate child pornography was based on "the admission made by the defendant following his arrest" in which he "admitted to Detective Morris that he was seeing how many of these images of child pornography he could collect 
and exchange
 with individuals over the Internet."  (Emphasis added.)  Again, the court went to great lengths to note that this finding was made "without considering the two instances of duplicate" images and therefore disregarding the presumption contained within the statute.  The presumption contained in section 11--20.1(b)(4) played no part in defendant's conviction.  

CONCLUSION

The circuit court of Kankakee County is affirmed.

Affirmed.

HOLDRIDGE, P.J., concurs.  

SLATER, J., concurs in part and dissents in part.

JUSTICE SLATER, concurring in part and dissenting in part:

_________________________________________________________________

I agree with the majority on all but the most fundamental issue:  whether the defendant was proved guilty beyond a reasonable doubt.  
Ashcroft
 and 
Alexander
 make it clear that a defendant cannot be convicted of possession of "virtual" child pornography, 
i.e.
, computer-generated images of non-existent children.  Therefore it is incumbent upon the State, as the bearer of the burden of proof, to prove beyond a reasonable doubt that the images for which defendant was prosecuted are images of real children.  Yet Detective Morris admitted that he did not know the identities of any of the children depicted in the images in question, nor did he take any steps to discover such information.  The majority relies on the trial judge's determination that the images were of real children, asserting that a court can utilize its "everyday observations and common experiences" in making such a finding.  Slip. op. at 15.  However, the United States Congress has recognized that new photographic and computer imaging technologies have made it possible to produce visual depictions of what 
appear
 to be children engaging in sexually explicit conduct that are 
virtually
 
indistinguishable
 from images of actual children engaging in such conduct.  See 
Alexander
, 204 Ill. 2d at 477-78, ___ N.E. 2d at ___, quoting 18 U.S.C. §2251, Congressional Findings, Note (5) (2000).  I believe that technology has rendered "everyday observations and common experience" of little value in distinguishing betweenm real and virtual images.  If proof "beyond a reasonable doubt" is to retain its meaning, some additional evidence must be required.  I respectfully dissent.