NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220285-U

NO. 4-22-0285

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 18, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| OTONIEL MOLINA, | ) | No. 19CF769 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

---

JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State's evidence was sufficient to prove defendant's guilt beyond a reasonable
doubt.

¶ 2    Following a stipulated bench trial, the trial court found defendant, Otoniel Molina,
guilty of child pornography (720 ILCS 5/11-20.1(a)(4) (West 2018)), indecent solicitation of a
child (*id.* § 11-6(a)), and grooming (*id.* § 11-25(a)). The court later sentenced him to 4 years in
prison for child pornography and 30 months' probation for the remaining two offenses. Defendant
appeals, arguing the State failed to prove his guilt beyond a reasonable doubt. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    In March 2019, defendant engaged in a series of electronic communications with
M.H., who was then an 11-year-old minor. Thereafter, the State charged him with two counts of
child pornography (*id.* § 11-20.1(a)(4)) (counts I and II), indecent solicitation of a child (*id.*

§ 11-6(a)) (count III), and grooming (*id.* § 11-25(a)) (count IV). Specifically, the State alleged defendant, a person over 17 years of age, asked for unclothed photos from a child he knew or reasonably should have known was under the age of 13 (count I); obtained photos of the unclothed genital or buttock area of a child he knew or reasonably should have known was under the age of 18 (count II); solicited M.H., a child under the age of 17, or a person whom he believed was a child, to perform an act of sexual penetration (count III); and knowingly used a "device capable of electronic data storage or transmission to seduce, solicit, lure, or entice a child" to engage in unlawful sexual conduct (count IV).

¶ 5 Defendant pleaded not guilty and waived his right to a jury trial. As an affirmative defense, he asserted that he reasonably believed M.H. was over 18 years of age, asserting as follows: "prior to the *** acts giving rise to [his] prosecution, he took some affirmative action or made a *bonafide* [*sic*] inquiry designed to ascertain whether [M.H.] was 18 years of age or older and his reliance upon the information so obtained was clearly reasonable."

¶ 6 In January 2022, the trial court conducted defendant's bench trial. The State's evidence and exhibits were presented by stipulation. Its evidence showed that M.H. was born in October 2007, and in March 2019, she was 11 years old. Defendant was born in September 1983. M.H. and defendant met on MeetMe, a social media site or application that was intended for use by adults. M.H. created a profile on the site that identified her as a 19-year-old female. Her profile picture on the site was a picture of the word "Love."

¶ 7 On March 3, 2019, beginning at 10:37 a.m., defendant and M.H. messaged one another on MeetMe and exchanged photos. The parties stipulated to the admission of People's exhibit No. 7, which contained a printout of defendant and M.H.'s conversation on MeetMe and the photos they exchanged. The photo of M.H. showed a close-up of her face with her mouth open

and two fingers placed on either side of her tongue. During their MeetMe conversation, defendant commented that M.H. "look[ed] really young." She responded by stating, "Yeah I know." Defendant then asked M.H. if she liked the pictures he had sent and, after M.H. responded that she did, defendant asked to see more pictures of her. Defendant also asked M.H. if she had a boyfriend. When M.H. stated that she did not, defendant asked, "R u gonna be my f***?" M.H. responded, "Sure," and defendant asked if he could see "a couple nudes." Defendant also asked M.H. for her name and number. M.H. replied that her name was "Ashley" and gave defendant her phone number.

¶ 8 Evidence showed defendant and M.H. began text messaging one another from their respective cellphones at 10:57 a.m. the same day. The parties stipulated to the admission of exhibits that contained a copy of the text exchange as it appeared on M.H.'s phone (People's exhibit No. 1) and in a report created following an "extraction" of M.H.'s phone (People's exhibit No. 2). The exhibits showed that defendant's first text to M.H. stated, "Hey ashley its Tony." At 11:01 a.m., defendant sent M.H. a text asking if she had "any full body pics," and M.H. replied that she did not. The following text exchange then occurred:

"[Defendant]: Where do u go to schooll [*sic*]

[M.H.]: Rockvally collage [*sic*]

[Defendant]: That's awesome that's where I went

[M.H.]: Oh cool

[Defendant]: What r u going for

[M.H.]: To learn how to be a doc

[Defendant]: *** U live with ur parents

[M.H.]: Just moved out

- 3 -

[Defendant]: U live by urself

[M.H.]: No I got a roommate

[Defendant]: That's smart

[Defendant]: Specially for a young girl like u."

¶ 9　　　Defendant next asked M.H. where she lived. After determining that the two lived near one another, he asked whether M.H. wanted him "to stop by" before he went to work. M.H. declined, stating that her "roommate would kill [her]." Defendant then asked M.H. if she was "horny" and if he could send her "a naughty pic." At 11:19 a.m., defendant texted M.H. a picture of his erect penis and asked, "what did u think," M.H. responded, "Love it," and defendant told her it was her "turn." When M.H. responded affirmatively and asked, "Where do u want," defendant replied, "I wanna see ur a*** and p*** and a full body one." Defendant asserted that if M.H. sent a "full body one" he would not "ask for more." He also asked M.H. whether she would make him use a condom and reiterated his request for a "full body" picture.

¶ 10　　　At 11:31 a.m., defendant sent M.H. a text asking, "When can we f***?" Shortly thereafter, he asked M.H., "How many guys have u been with?" M.H. responded that she had been with three. Defendant asked M.H. what she would do with his penis and M.H. replied, "Suck it and shove it down my throat." A short time later, defendant sent a text that stated, "send me a full body pick pleasseee." At 11:42 a.m., he questioned M.H. regarding her age, stating "Ur really 19 right? I dont wanna get in trouble." M.H. replied, "Yeah." Defendant then asked M.H. if she had a car and if she could drive. M.H. responded that she could drive but she "just [did not] want to."

¶ 11　　　After a break in the conversation, defendant sent a text to M.H. at 2:05 p.m. that said, "Hiiii." M.H. responded that she was taking a shower, and defendant requested "pics please." At 2:15 p.m., M.H. texted defendant a picture of her face peering out from behind a shower curtain.

Defendant then indicated that he wanted M.H. to send a picture of her breasts. M.H. declined and defendant texted, "Butt then lol." At 2:18 p.m., M.H. sent defendant a picture that depicted her unclothed buttocks with her genital area, the latter of which was in shadow. Defendant responded, "Niceeeee" and suggested M.H. send a video. M.H. declined that request and defendant texted, "Wanna f***?" M.H. responded, "Can't know." Defendant inquired as to why and then asked M.H., "How will I know if ur 19?" M.H. stated, "Well you have to trust me." M.H. also requested a picture from defendant. At 2:35 p.m., defendant sent M.H. a second picture of his erect penis.

¶ 12       The State's evidence further showed that on March 23, 2019, M.H.'s mother looked through M.H.'s phone and located the text messages exchanged between M.H. and defendant. The same day, two police detectives interviewed defendant. At trial, the parties stipulated to the admission of a recording of defendant's interview with the police. On the recording, defendant appeared in uniform and was identified as a police officer. The detectives initially informed defendant that his name came up during the course of an investigation that involved "an app called Like." Defendant denied knowing about or using that application. Defendant also denied that he had been texting with a girl named "Ashley." He acknowledged that he had sent naked pictures of himself to others, specifying one woman in particular who was an "older girl." However, he did not remember sending any naked pictures to someone named "Ashley." After detectives informed defendant that Ashely was an 11-year-old girl, defendant responded, "I don't know any Ashley and I never had [the Like application] on my phone."

¶ 13       Detectives next inquired whether defendant had ever had a conversation with a girl who told him that she was 19 years old. Defendant responded, "That's the one," and recalled meeting someone that he thought was named "Nicole" on MeetMe about a month prior. He asserted he asked that person several times if she was 19. The girl sent him two naked pictures,

but he thought she appeared "young" and that she was "fishy," so he "erased it all." According to defendant, the girl sent him pictures of her buttocks, vagina, and face. In the pictures of her face, she had braces and was "very young looking." When asked whether it looked like the girl had reached puberty, defendant replied that she was "shaven" or that she had "no [pubic] hair." He admitted that he also sent the girl pictures of himself. Defendant maintained that the situation "seemed weird" and the girl would not answer his questions about her age. He further stated as follows: "The girl did send me stuff, I sent her stuff, I didn't think she was 19, so I blocked her."

¶ 14    Following the trial court's review of the stipulated evidence, defendant's counsel moved for a directed finding in defendant's favor. He argued the State's evidence was insufficient to support findings of guilt, in that it failed to show defendant had the requisite knowledge and intent to commit the charged offenses. Specifically, counsel argued defendant reasonably believed he was conversing with a person who "was of age." The court denied defendant's motion, finding that M.H. "appear[ed] to be a minor" in her pictures and that the sexual conversation between defendant and M.H. continued even after M.H. sent "the picture in the shower." After the court's ruling, defendant rested his case without presenting any additional evidence. His counsel then renewed his motion for a directed finding, which the court also denied.

¶ 15    During closing arguments, the State asserted the evidence clearly showed that "defendant knew that he was talking to a minor" when he communicated with M.H. It argued the pictures of M.H.'s face clearly depicted a child under the age of 18 and that "the one in the shower" also showed that she was under the age of 13. The State noted that after defendant received M.H.'s pictures, he continued to engage in sexual conversations with her and sent her a second picture of his penis. It further maintained that defendant's recorded interview showed consciousness of guilt because he was not forthcoming with the detectives about his communications with M.H.

¶ 16     During defendant's closing argument, his counsel, again, argued that defendant lacked the necessary knowledge and intent to commit the charged offenses. He pointed out that defendant met M.H. on "a website meant for adults" and that M.H. portrayed herself as a 19-year-old female. He also maintained that defendant took "affirmative action and made a *bona fide* inquiry designed to ascertain [M.H.'s] age." He argued defendant asked M.H. questions, including her age, and received responses that were "age-appropriate" for a 19-year-old person, *i.e.*, that M.H. was in college and that she lived with a roommate. According to counsel, it was reasonable under all of the circumstances for defendant to believe that M.H. was an adult and not a minor.

¶ 17     The trial court found defendant not guilty of child pornography as alleged in count I, based on defendant having knowledge that M.H. was under 13 years of age. However, it found him guilty of the remaining three offenses, including child pornography based on defendant having knowledge that M.H. was under 18 years of age, indecent solicitation of child, and grooming. In setting forth its decision, the court determined that M.H. looked young in the pictures showing her face. Although the court did not find that the State proved beyond a reasonable doubt that defendant knew or should have known that M.H. was under the age of 13 (as alleged in count I), it did find that the picture of M.H. with "her face around the shower curtain" clearly appeared "to be someone under the age of 18." Further, it noted that after M.H. sent that picture to defendant, defendant requested other pictures, M.H. sent the picture of her naked buttocks, defendant sexually propositioned M.H., and defendant sent M.H. the second picture of his penis. The court also found that defendant had not been honest with the detectives during his recorded interview.

¶ 18     In March 2022, defendant filed an amended posttrial motion, arguing, in part, that the State failed to prove his guilt beyond a reasonable doubt. The same month, the trial court

conducted a hearing and denied defendant's motion. It noted that although defendant had inquired as to M.H.'s age, he also received pictures of her. The court determined that in at least one of those pictures, M.H. "looked extraordinarily young," and it noted that defendant's "request for sexual pictures continued after that point." The court thereafter sentenced defendant to four years in prison for child pornography and a total of 30 months' probation for indecent solicitation of a child and grooming.

¶ 19     This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21     On appeal, defendant challenges the sufficiency of the State's evidence against him, arguing his three convictions should be vacated. Specifically, he contends the State failed to prove beyond a reasonable doubt that he "knew or should have known that M.H. was under 18 years old or a 'child.' " Defendant notes the evidence showed that he encountered M.H. on a social media site that was intended for use by adults, M.H. represented that she was 19 years old, and M.H. responded to him in a way that was consistent with her asserted age of 19. According to defendant, the evidence supports a finding that he "took action or made a *bonafide* [*sic*] inquiry to determine [M.H.'s] age" and, thereafter, reasonably believed M.H. was 18 years of age or older.

¶ 22     "The State has the burden of proving beyond a reasonable doubt each element of an offense." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. "When reviewing the sufficiency of the evidence, the relevant question is whether, after viewing all the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Brand*, 2021 IL 125945, ¶ 58, 190 N.E.3d 149. "All reasonable inferences from the evidence must be drawn in favor of the prosecution." *People v. Cline*, 2022 IL 126383, ¶ 25, 193 N.E.3d 1220.

¶ 23    "The trier of fact determines the credibility of the witnesses, decides what weight to give their testimony, resolves conflicts in the evidence, and draws reasonable inferences from that evidence." *People v. Swenson*, 2020 IL 124688, ¶ 36, 181 N.E.3d 116. A reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact. *People v. McLaurin*, 2020 IL 124563, ¶ 22, 162 N.E.3d 252. On review, the trial court's judgment will not be reversed "unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *Cline*, 2022 IL 126383, ¶ 25.

¶ 24    As charged in this case, a person commits child pornography if he "solicits, uses, persuades, induces, entices, or coerces any child whom he *** knows or reasonably should know to be under the age of 18" to appear in any photograph that depicts the unclothed genitals, pubic area, or buttocks of the child. 720 ILCS 5/11-20.1(a)(4), (a)(1)(vii) (West 2018).

> "It shall be an affirmative defense to a charge of child pornography that the defendant reasonably believed, under all of the circumstances, that the child was 18 years of age or older *** but only where, prior to the act or acts giving rise to a prosecution *** he or she took some affirmative action or made a [*bona fide*] inquiry designed to ascertain whether the child was 18 years of age or older *** and his or her reliance upon the information so obtained was clearly reasonable." *Id.* § 11-20.1(b)(1).

¶ 25    Further, a person commits indecent solicitation of a child if he is over the age of 17 and, with the intent to commit the offense of aggravated criminal sexual abuse, he knowingly solicits a child under the age of 17, or one whom he believes to be a child under the age of 17, to perform an act of sexual penetration or sexual conduct. *Id.* § 11-6(a), (b). Finally, a person commits the offense of grooming when he "knowingly uses" any "device capable of electronic data storage

or transmission to seduce, solicit, lure, or entice *** a child *** or another person believed *** to be a child *** to *** engage in any unlawful sexual conduct." *Id.* § 11-25(a). For purposes of the grooming statute, " 'child' means a person under 17 years of age." *Id.*

¶ 26    Here, the evidence was undisputed that M.H. was 11 years old when the alleged offenses occurred. In finding defendant possessed the requisite knowledge that M.H. was under the age of 18 and a "child," the trial court relied on M.H.'s "clearly" underage appearance in the pictures of her face, and particularly in the picture with "her face around the shower curtain."

¶ 27    We note that when determining whether a person depicted in an image is a minor, a court does not need expert testimony and may, instead, "rely on its own everyday observations and common experiences in making this determination." *People v. Thomann*, 197 Ill. App. 3d 488, 499, 554 N.E.2d 748, 755 (1990) (citing *People v. Schubert*, 136 Ill. App. 3d 348, 354, 483 N.E.2d 600, 605 (1985) ("Just as the trier of fact can determine what constitutes obscenity [citation], so can it, based on everyday observations and common experiences, assess the age of the children depicted with the requisite degree of certainty to satisfy the standard of proof beyond a reasonable doubt.")). In this instance, we agree that the pictures at issue depict someone who is very young in appearance. Accordingly, we cannot say that the court's finding that the pictures obviously depicted a child was so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt.

¶ 28    Additionally, defendant's own statements to both M.H. and the police indicate that he did not believe M.H. was an adult. The record shows that after receiving the first picture of M.H.'s face, defendant told M.H. she "look[ed] really young." He indicated to detectives during his police interview that M.H. had sent him pictures (other than those contained within the appellate record) that showed M.H. with braces, and with no pubic hair. Ultimately, defendant

admitted that he thought something was "fishy," and that he "didn't think [M.H.] was 19."

¶ 29　　　　Defendant's recorded police interview also shows consciousness of guilt. During the interview, defendant was not forthcoming about the full extent of his communications with M.H. He suggested to detectives that he stopped communicating with M.H. after they exchanged pictures and he thought something was "fishy." However, the evidence at trial showed that after receiving both of the facial pictures of M.H., defendant requested other pictures and received a picture of M.H.'s naked buttocks. Following that picture, defendant asked M.H. to send a video, propositioned M.H. sexually, and sent M.H. a second picture of his erect penis. Defendant's attempts to minimize the nature and extent of his communications with M.H. further suggest his knowledge that M.H. was under the age of 18 and a child.

¶ 30　　　　Like he did before the trial court, defendant argues the applicability of his alleged affirmative defense. He contends the evidence showed he took affirmative action or made a *bona fide* inquiry designed to ascertain M.H.'s age. Specifically, defendant asserts he asked M.H. "many questions" and "she responded in a manner that would allow him to reasonably believe he was conversing with an adult." We disagree.

¶ 31　　　　Initially, we note that M.H.'s responses to defendant could reasonably be viewed as displaying a level of immaturity rather than age appropriateness for someone of college age. Specifically, when M.H. responded to defendant's question about where she went to school, she misspelled both the name of the college she purportedly attended and the word "college" itself. She also told defendant she was going to school "[t]o learn how to be a doc" and indicated to defendant that she did not drive. Although such responses are not dispositive of the issue of defendant's knowledge, they tend to cast doubt upon defendant's assertion that he reasonably believed he was communicating with a college-age adult. This is particularly true when M.H.'s

responses are taken together with the facial pictures that defendant received.

¶ 32    Also, as the trial court noted, defendant's communications with M.H. were "very sexualized" from the outset of their interaction. After receiving the first picture of M.H.'s face, defendant commented that M.H. "look[ed] really young." Without any further inquiry, he requested more pictures from M.H., asked her if she had a boyfriend and if she would be his "f***," and requested "a couple nudes." Although defendant further questioned M.H. about her stated age during their conversation, at the same time, he was also asking her to send nude photographs, asking her to engage in sexual activities, and sending nude pictures of himself. As the court pointed out, "if you want to make sure somebody is of age, it seems like all the conversation would be about that in the beginning. And it isn't."

¶ 33    Moreover, even assuming that defendant made a good faith attempt to determine M.H.'s age, the evidence does not support a finding that it was reasonable for defendant to believe M.H. was an adult. As stated, the trial court determined M.H.'s pictures showed that she was young and "clearly" underage. The court's determination is supported by the record and not unreasonable, improbable, or unsatisfactory. Additionally, as stated, defendant's own statements to the police contradict his assertion that he believed M.H. was an adult.

¶ 34    Under the circumstances presented, we find the evidence presented was sufficient to establish defendant's guilt beyond a reasonable doubt. As a result, defendant's challenge to the sufficiency of the evidence lacks merit.

¶ 35    III. CONCLUSION

¶ 36    For the reasons stated, we affirm the trial court's judgment.

¶ 37    Affirmed.